**Andrew Earl WILLIAMS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 10–96–095–CR.**

Court of Appeals of Texas,
Waco.

June 4, 1997.

---

Bruno Shimek, Bryan, for appellant.

Bill R. Turner, District Attorney, Kerry Mason, Asst. District Attorney, for appellee.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

DAVIS, Chief Justice.

A jury convicted Appellant Andrew Earl Williams of the felony offense of driving while intoxicated ("DWI"). *See* Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 3, 1983 Tex. Gen. Laws 1568, 1576 (former TEX.REV. CIV. STAT. ANN. art. 6701*l*–1(e)), *repealed by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.15, 1993 Tex. Gen. Laws 3586, 3704. ("TEX.REV.CIV.STAT.ANN. art. 6701*l*–1(e)") Two prior felony convictions enhanced Williams' punishment to the level of a habitual offender. The jury sentenced him to sixty years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

## FACTUAL BACKGROUND

### THE ALLEGATIONS

The grand jury for the 272nd District Court of Brazos County presented an indictment against Williams for felony DWI alleging that Williams committed the offense on or about June 6, 1994, "by not having the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body and by having an alcohol concentration of 0.10 or more." The indictment alleges a 1987 felony DWI conviction and a 1984 misdemeanor DWI conviction to elevate the primary offense to a felony. *Id.*

### WILLIAMS' REPRESENTATION

Williams' appellate counsel Bruno Shimek also served as his trial counsel. The record reflects that Williams had two previous attorneys appointed by the court. The court forfeited Williams' appearance bond after he failed to appear on January 6, 1995. On February 2, his first attorney filed a motion to withdraw because Williams had failed to contact him about the case or keep him informed of his current address. The court permitted the first attorney to withdraw on February 8. Williams' surety retained a private investigator to locate Williams. The investigator found him in Madison County on July 17, and he was placed in custody.

On October 20, the court appointed a second attorney to represent Williams. The second attorney filed a motion to withdraw on February 16, 1996, asserting that Williams had asked him to withdraw. He attached a letter written by Williams asking him to withdraw because he "could not defend [him], or could not find a defense for [him], or want to defend [him]." The court granted the motion to withdraw on February 22 and appointed Shimek to represent him.

### PRETRIAL MOTIONS

Shimek filed a motion to dismiss the indictment because the State had lost the videotape depicting Williams performing sobriety tests at the Brazos County jail. Williams filed a *pro se* motion to dismiss the indictment alleging the State destroyed a printout from the intoxilyzer which indicated that his alcohol concentration was less than 0.10. Shimek adopted the *pro se* motion, and the court heard both motions before trial.

Williams testified at the hearing on the motions to dismiss. He recalled that he spoke "normally" during the video recording. He also explained to Department of Public Safety Trooper Kelvin Dawson during the recording that he had sustained a back injury in April of 1994, which limited his ability to perform the sobriety tests requested by the officer. Williams told the court that his prior record prohibited him from testifying on his own behalf at trial. Shimek testified that the district attorney's office informed him the videotape had been lost. The court overruled Williams' motion to dismiss because of the lost videotape but stated that at trial Williams would be allowed to establish through Dawson that the State lost the tape.

Williams also testified about the intoxilyzer test. He explained that after the submission of his first specimen of breath, the intoxilyzer displayed a result of ".002 something." He testified that Dawson took the result of the first specimen "and wadded it up and throwed it in the trash." Based on Williams' observation of the first result, he concluded that he "passed" the test (*i.e.*, that his alcohol concentration was less than 0.10). Williams offered in evidence Dawson's probable cause affidavit which reflects that the result of the

first test was ".23.0" and that Williams was unable to complete the second test. He also offered the offense report prepared by Dawson which noted that the result of the first test was "0.23.7" and that Williams was unable to provide a second specimen of his breath. The court overruled this motion.

The State presented no evidence at the hearing on the motions to dismiss.

THE TRIAL EVIDENCE

The trial testimony reveals that on June 6, 1994, Williams and his father Ervin went to see some friends of Ervin, the Lenzes. According to Ervin, Williams had been drinking on the way to the Lenzes' house. Williams argued with Ervin at the Lenzes', and Ervin asked him to leave. While Williams was attempting to leave, Ervin reached for his cap in the front seat of Williams' car. According to Ervin, Williams backed over him as he attempted to retrieve his cap. Someone at the Lenzes' called the police and reported that Williams was driving while intoxicated.

Brazos County Deputy Constable Steven Cruse initially stopped Williams after hearing the dispatch report and seeing Williams driving in an erratic manner. Cruse observed Williams' car drifting from the center line of the road to the edge of the improved shoulder and back. Cruse noted that Williams was traveling more slowly than the traffic flow, and he saw other cars passing Williams' car. Cruse testified that the road was "pretty heavily traveled [at] that time of day." When Williams saw Cruse, he immediately pulled over.

On the side of the road, Cruse repeatedly asked Williams to provide some form of identification. Williams never complied with this request.[1] Cruse ultimately removed Williams' billfold from his pants and extracted his Texas identification card.

Trooper Dawson joined Cruse at the scene on the eastbound shoulder of United States Highway 190/State Highway 21. Cruse described Williams' erratic driving to Dawson and handed him Williams' identification card. Dawson decided not to administer any sobriety tests to Williams on the side of the road because of Williams' apparent intoxicated state.[2] Dawson testified that this was a "peak traffic" time on the highway.

Dawson arrested Williams for DWI and transported him to the Brazos County jail. At the jail, Dawson got a blank videotape and took Williams to the intoxilyzer room. In this room, Dawson asked Williams to perform the heel-to-toe test, the one-leg-stand test, and the nose-touch test. Dawson recorded Williams' performance on the videotape. Dawson testified that Williams did poorly on each test. Dawson took a still photograph of Williams in the intoxilyzer room which was offered in evidence at trial.

After submitting to the physical sobriety tests, Williams agreed to take the intoxilyzer test. Dawson explained that the intoxilyzer requires two specimens of breath from the test subject in order to obtain a valid test result. Williams gave a good breath specimen on his first attempt. After Williams provided this first specimen, the intoxilyzer displayed the results of the analysis of the specimen. According to Dawson, the display was within Williams' sight.

When Williams attempted to provide a second specimen, however, he complained that he was getting dizzy and was unable to blow anymore. Williams made seven attempts but never provided a valid second specimen. Dawson testified that he did not "rip[ ] off and discard[ ] or anything like that" the results of the intoxilyzer test taken by Williams.

Dawson and Cruse reviewed the videotape at the DPS office in Bryan on June 7. Dawson explained that standard DPS procedure is to review the tape at the office prior to writing an offense report. After the sergeant approves the report, the officer gives

1. Cruse attributed this failure to Williams' apparent intoxicated state. Cruse explained that he did not ask Williams to perform any sobriety tests because he appeared so intoxicated.

2. According to Dawson, Williams nearly fell to the ground when he attempted to get up from the bumper of his car. Aside from difficulty standing, Williams' eyes were bloodshot; he smelled strongly of alcohol; and he mumbled when he spoke.

the tape to the secretary, if available, or to an officer. The tape is subsequently delivered to the appropriate prosecutor's office. Dawson testified that he searched the DPS office and checked with the county attorney's office without success in his effort to locate the missing tape.

On cross-examination, Dawson testified that Williams had informed him about prior injuries to his back and jaw during an interview conducted after the physical sobriety tests and the intoxilyzer test had been attempted. Dawson recalled that Williams told him these injuries had occurred about four months prior to the arrest and that he had been treated for the injuries at the HEB Health Clinic in Madisonville. Dawson maintained that Williams did not mention these injuries before or during the sobriety testing. He agreed that the videotape would reveal whether Williams told him about his back injury during the sobriety testing. He also agreed that the tape would allow the jury to hear how Williams' speech sounded.

## THE *PRO SE* BRIEF

Shimek raises four points of error in the brief he has filed on Williams' behalf. Williams has also filed a *pro se* brief in which he asserts seven points of error. We first address the propriety of the *pro se* brief.

▬▬ An appellant has no right to hybrid representation. *Turner v. State,* 805 S.W.2d 423, 425 n. 1 (Tex.Crim.App.1991). Generally, when an appellant has counsel and counsel has filed a brief, the appellant has no right to file a *pro se* brief. *Tobias v. State,* 884 S.W.2d 571, 585 (Tex.App.—Fort Worth 1994, pet. ref'd). Thus, "[*p* ]*ro se* briefs present nothing for review." *Id.* (citing *Turner,* 805 S.W.2d at 425 n. 1) (italicization added). Nonetheless, we may consider a *pro se* brief if the interests of justice require us to do so. *See Rudd v. State,* 616 S.W.2d 623, 625 (Tex. Crim.App. [Panel Op.] 1981); *Tobias,* 884 S.W.2d at 585. We have reviewed Williams' *pro se* points and find that the interests of justice require that we consider them.

## THE APPELLATE POINTS

Shimek asserts that the trial court erred in:

- denying Williams' motion to dismiss the indictment because the State lost the videotape of Williams performing sobriety tests;
- denying his motion to dismiss the indictment because the State destroyed an intoxilyzer printout which would have been beneficial to his defense;
- denying his motion for an instructed verdict because the evidence is insufficient to prove that Williams is the same person who was convicted in the prior DWI convictions alleged in the indictment to make the instant DWI charge a felony; and
- denying his motion for a mistrial because of improper jury argument by the State.

We will refer to these points as "Shimek's points."

Williams alleges in his *pro se* brief that:

- the indictment is defective because it was presented by the grand jury for the 272nd District Court of Brazos County, but his trial was held in the 361st District Court of Brazos County;
- the State improperly amended the indictment after the commencement of trial;
- the State lost the videotape;
- the prior 1984 misdemeanor DWI conviction alleged in the indictment to felonize the instant DWI charge could not be so employed because it had already been used to felonize a 1987 DWI charge;
- the prior 1984 and 1986 misdemeanor DWI convictions alleged to felonize the 1987 DWI charge are both void because he was not represented by counsel in either case; [3]
- because the prior DWI convictions are void, the court misstated the range of punishment applicable to the case when

---

3. The State offered a certified copy of Williams' driving record in evidence. The driving record reflects prior DWI convictions in 1984, 1986,

and 1987. The indictment in this case alleges only the 1984 and 1987 DWI convictions to elevate the present offense to a felony.

it authorized the jury to punish him for felony DWI; and

● his appellate counsel is ineffective because he has failed to communicate with Williams regarding the points of error to be raised in this appeal.

We will refer to these points as "Williams' points."

## LOST EVIDENCE

Shimek's first point and Williams' third point both complain that the court erred in overruling Williams' motion to dismiss alleging that the State lost the videotape of his performance on the sobriety tests. Shimek's second point contends that the court erred in overruling Williams' motion to dismiss alleging that the State destroyed his intoxilyzer test result.

■ The State has a duty to preserve exculpatory evidence. *California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984); *Mahaffey v. State,* 937 S.W.2d 51, 53 (Tex.App.—Houston [1st Dist.] 1996, no pet. h.). When an accused complains of lost evidence, he must show that the evidence lost is material and favorable to him. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 873, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982); *Mahaffey,* 937 S.W.2d at 53.

■ "A showing that the lost evidence *might have been* favorable does not meet the materiality standard." *Hebert v. State,* 836 S.W.2d 252, 254 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) (emphasis in original); *accord Gamboa v. State,* 774 S.W.2d 111, 112 (Tex.App.—Fort Worth 1989, pet. ref'd) (citing *Valenzuela–Bernal,* 458 U.S. at 873, 102 S.Ct. at 3449). In addition, the accused must show that the State acted in bad faith when it failed to preserve the evidence in order to show a violation of due process or due course of law. *Arizona v. Youngblood,* 488 U.S. 51,

58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988) (due process); *Mahaffey,* 937 S.W.2d at 53 (due course of law).

### THE VIDEOTAPE

■ In the hearing on Williams' motion to dismiss alleging the loss of the videotape, Williams testified that during the recording he spoke "normally," he told Dawson he had injured his back, and he performed the sobriety tests poorly because of the prior back injury. The evidence also established that the State lost the videotape.

Assuming *arguendo* that Williams established the videotape to be material and favorable, he presented no evidence that the State had any culpability in connection with the loss of the tape.[4] *Mahaffey,* 937 S.W.2d at 53. Thus, we overrule Shimek's first point and Williams' third point.

### THE INTOXILYZER RESULT

In the hearing on Williams' motion to dismiss alleging the destruction of the intoxilyzer result, Williams testified that the analysis of his first breath specimen reflected an alcohol concentration of ".002 something" and that Dawson destroyed an intoxilyzer printout which reflected this "passing" test result. Williams offered the reports prepared by Dawson in connection with his arrest. Dawson's probable cause affidavit and his offense report recited that the result of this first test was ".23.0" and "0.23.7" respectively. Thus, the court heard conflicting evidence about the exculpatory nature of the alleged intoxilyzer printout.[5]

Dawson's report also indicated that Williams was unable to complete the breath test analysis because he could not provide a second breath specimen. *See May v. State,* 784 S.W.2d 494, 496–97 (Tex.App.—Dallas 1990, pet. ref'd), *overruled on other grounds*

---

4. In Williams' brief, he asserts that Dawson took the videotape home and thereafter lost the tape. However, the record contains no evidence supporting this allegation. We further note that no evidence presented at trial shows bad faith on the part of the State.

5. We presume the court was aware of the manner in which the intoxilyzer prints out its results.

The intoxilyzer expresses its results in terms of 0.000 grams of alcohol per 210 liters of breath. *See, e.g., Stevenson v. State,* 895 S.W.2d 694, 698 (Tex.Crim.App.1995) (McCormick, P.J., dissenting). Thus, it is difficult to see how the intoxilyzer could have obtained a result of "0.002 something."

*by Stevenson v. State*, 920 S.W.2d 342, 344 (Tex.App.—Dallas 1996, no pet.) (State erroneously introduced intoxilyzer result displayed after first test, where accused unable to provide second specimen). The State argued that because Williams' test was invalid due to the failure to obtain the second breath specimen, it could not offer the results of the first test in evidence. *Id.* The State also suggested that Williams' remedy for the alleged destruction of the printout was to cross-examine Dawson about the matter.

■ In a pretrial hearing, the court is the sole judge of the weight and credibility of the evidence. *Freeman v. State*, 723 S.W.2d 727, 729 (Tex.Crim.App.1986); *Gaitan v. State*, 905 S.W.2d 703, 708 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd). We will not disturb the court's evaluation of the evidence absent an abuse of discretion. *Id.* So long as the court's decision lies "within the zone of reasonable disagreement," we will not reverse that determination. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (on rehearing); *Gaitan*, 905 S.W.2d at 708.

■ In the hearing, the court had to weigh Williams' testimony against Dawson's report which was prepared the day after Williams' arrest. We cannot say that the court's decision to overrule the motion lies outside "the zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391. Thus, we overrule Shimek's second point.

## THE INDICTMENT

Williams' first point attacks the form of the indictment. The grand jury for the 272nd District Court of Brazos County presented the indictment. The District Clerk filed the indictment in the 361st District Court of Brazos County.

Article 1.14(b) of the Code of Criminal Procedure provides that an accused must object to defects in the form of an indictment prior to the day of trial or else the accused waives the right to complain of the alleged defect at a later time. TEX.CODE CRIM. PROC.

ANN. art. 1.14(b) (Vernon Supp.1997); *see Studer v. State*, 799 S.W.2d 263, 268 (Tex. Crim.App.1990).

A complaint that an indictment has not been presented in the proper court is a complaint alleging a defect in the form of the indictment. TEX.CODE CRIM. PROC. ANN. art. 27.09(1) (Vernon 1989).

■ Williams did not object to the form of the indictment prior to trial. Thus, he has waived the right to complain that the indictment was not presented in the proper court. *Studer*, 799 S.W.2d at 268; TEX.CODE CRIM. PROC. ANN. art. 1.14(b). We overrule Williams' first point.

## THE PRIOR DWI CONVICTIONS

Shimek's third point alleges that the evidence is insufficient to prove that Williams is the same person who was convicted in the prior DWI convictions alleged in the indictment.[6] Williams' fourth point avers that the 1984 misdemeanor DWI conviction alleged in the indictment cannot be used to felonize the instant DWI charge because it had already been used to felonize his 1987 DWI. Williams' fifth point complains that the 1984 and 1986 misdemeanor DWI convictions used to felonize the 1987 DWI charge are void because he was not represented by counsel in either case. Williams' contends in his sixth point that because the prior DWI convictions are void, the court misstated the range of punishment when it submitted the case to the jury as a felony DWI.

### SUFFICIENCY OF THE EVIDENCE

■ In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). We resolve any inconsistencies in the evidence in favor of

---

6. Williams does not contest the factual sufficiency of the evidence. *See Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996).

the verdict. *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

▮ Even if the name on the judgment is the same as that of the accused on trial, the State must present independent evidence that the accused is the same person previously convicted. *Griffin v. State,* 866 S.W.2d 754, 756 (Tex.App.—Tyler 1993, no pet.).

▮ Photographs made available to the jury for comparison with the accused can provide the independent evidence necessary to prove the accused was previously convicted as alleged. *See Littles v. State,* 726 S.W.2d 26, 32 (Tex.Crim.App.1987) (on rehearing); *Spaulding v. State,* 896 S.W.2d 587, 591 (Tex.App.—Houston [1st Dist.] 1995, no pet.). Identification information such as name, sex, height, eye color, hair color, and date of birth can also suffice as independent evidence tending to prove identity. *Dorsett v. State,* 396 S.W.2d 115, 116 (Tex.Crim.App. 1965); *accord Littles,* 726 S.W.2d at 31 n. 1; *Spaulding,* 896 S.W.2d at 591.

▮ In the instant case, Dawson testified that after booking Williams into the jail, he obtained Williams' license number from the DPS computer. *Cf. Lopez v. State,* 805 S.W.2d 882, 885 (Tex.App.—Corpus Christi 1991, no pet.) (officer obtained accused's license number from dispatcher). The State offered certified copies of Williams' driver's license and his driving record. The license bears a photograph of Andrew Earl Williams and identifies Williams' date of birth, his gender, his eye color, and his height. The driving record contains the cause numbers and the dates of the prior DWI convictions alleged in the indictment, and the courts in which those convictions were had. The State also offered certified copies of the prior judgments for the prior DWI convictions alleged.

We must evaluate each case on its own merits. *Littles,* 726 S.W.2d at 32. The jury had ample opportunity to observe Williams and compare him with the license photograph and other identification information contained in his license. *Dorsett,* 396 S.W.2d at 116; *Spaulding,* 896 S.W.2d at 591. The jury could also compare the license photograph with the photograph taken by Dawson at the jail. *Id.* Thus, we find that a rational

trier of fact could have found that Williams is the same Andrew Earl Williams previously convicted of the two DWI convictions alleged in the indictment. *Saxton,* 804 S.W.2d at 914. We overrule Shimek's third point.

MULTIPLE USE OF PRIOR DWI CONVICTION

Williams asserts in his fourth point that once a DWI conviction has been successfully used to felonize a subsequent DWI charge, it cannot be used again for the same purpose. *See generally Haines v. State,* 623 S.W.2d 367, 369–70 (Tex.Crim.App.1981) (construing Penal Code enhancement provisions). Thus, he concludes that his 1984 misdemeanor DWI conviction alleged in the indictment cannot be employed in the instant case because it was used to felonize his 1987 DWI.

The State responds that Williams has failed to demonstrate that the 1984 misdemeanor DWI was used to felonize the 1987 DWI, noting that the felony DWI judgment does not recite which prior DWI convictions the State relied upon to make it a felony. In the alternative, the State suggests that the Court of Criminal Appeals has specifically excepted the felony DWI statute from the multiple use prohibition. *See Hill v. State,* 158 Tex.Crim. 313, 315, 256 S.W.2d 93, 94 (1953), *overruled on other grounds by Vasquez v. State,* 477 S.W.2d 629, 632 (Tex.Crim. App.1972).

Although, the 1987 felony DWI judgment does not reflect the prior DWI convictions upon which it was based, Williams driving record reveals only two DWI convictions prior to the felony DWI. Thus, assuming *arguendo* that these were Williams' only DWI convictions prior to his 1987 felony DWI, the State necessarily employed the 1984 misdemeanor DWI to make Williams a felony DWI offender in the 1987 case. *See* TEX.REV.CIV. STAT. ANN. art. 6701*l* 1(e).

The *Kinney* Rule

The prohibition against the repeated use of convictions for enhancement purposes is historically known in Texas as the *Kinney* rule. *See Kinney v. State,* 45 Tex.Crim. 500, 79 S.W. 570 (1904) (on rehearing). In *Kinney,* the Court of Criminal Appeals considered

whether the State could allege a prior felony conviction for enhancement purposes after that particular prior conviction had already been successfully used to enhance punishment in another case. The Court held "that prior offenses could [not] thus be made to do double duty...." *Id.,* 79 S.W. at 571. The Court was construing the enhancement provisions of the 1895 Penal Code. *See id.*

*Kinney* remained in force after the enactment of the 1974 Penal Code. *See Carvajal v. State,* 529 S.W.2d 517, 521 (Tex.Crim.App. 1975). In *Carvajal,* the Court concluded that because the Legislature failed to enact a specific provision allowing for the repeated use of prior convictions for enhancement purposes, *Kinney* still applied. *Id.* The Legislature enacted such a law in 1979. Act of May 22, 1979, 66th Leg., R.S., ch. 459, § 1, 1979 Tex. Gen. Laws 1027, 1027, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws at 3605 (current version at TEX. PENAL CODE ANN. § 12.46 (Vernon 1994)). The Court subsequently determined that the enactment of section 12.46 overruled *Kinney.* *See Haines,* 623 S.W.2d at 369.[7]

Regardless of the current viability of *Kinney,* the Court of Criminal Appeals specifically excepted a former felony DWI statute from the *Kinney* rule in 1953. *Hill,* 158 Tex.Crim. at 315, 256 S.W.2d at 94 (construing article 802b of the former Vernon's Texas Penal Code). Article 802b provided:

> Any person who has been convicted of the misdemeanor offense of driving or operating an automobile or other motor vehicle upon any public road or highway in this state, or upon any street or alley within an incorporated city, town or village, while intoxicated or under the influence of intoxicating liquor, and who shall thereafter drive or operate an automobile or other motor vehicle upon any public road or

7. Article 6701*l*–1 does not have a similar multiple use provision.

8. The pertinent portions of article 6701*l*–1 provided as follows:

> (b) A person commits an offense if the person is intoxicated while driving or operating a motor vehicle in a public place....

highway in this state, or upon any street or alley within the limits of an incorporated city, town or village, while such person is intoxicated or under the influence of intoxicating liquor, shall for each and every subsequent such violation be guilty of a felony....

Act of June 6, 1951, 52nd Leg., R.S., ch. 457, § 1, 1951 Tex. Gen. Laws 813, 813–814, *amended by* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 5, 1973 Tex. Gen. Laws 883, 995–96 & 996c (recodified as TEX.REV.CIV. STAT. ANN. art.6701*l*–2).

The Court observed that article 802b "[was] not an enhancement of punishment statute but create[d] a new and independent crime of the grade of felony, an essential element of which [was] that the person charged [had] previously been convicted of ... driving while intoxicated." *Hill,* 158 Tex.Crim. at 315, 256 S.W.2d at 94. The Court held that *Kinney* only applies to cases arising under the enhancement provisions of the Penal Code. *Id.*

When the Legislature adopted the 1974 Penal Code, it recodified article 802b as article 6701*l*–2 of the civil statutes. Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 5, 1973 Tex. Gen. Laws at 995–96, 996c. Thus, the felony DWI statute continued to be a truly "independent" offense. *See Luedke v. State,* 711 S.W.2d 657, 659 (Tex.Crim.App.1986) (construing article 6701*l*–2). However, in 1983 the Legislature significantly altered the DWI statutes.

### The Integrated DWI Statute

In 1983, the Legislature repealed the former article 6701*l*–2 and incorporated the felony offense into a new "integrated" statute. *Addington v. State,* 730 S.W.2d 788, 789 (Tex. App.—Texarkana 1987, pet ref'd); TEX.REV. CIV. STAT. ANN. art. 6701*l*–1(e).[8] Because of

> (c) Except as provided by Subsections (d), (e), and (f) of this article, an offense under this article is punishable by:
> (1) a fine of not less than $100 or more than $2,000; and
> (2) confinement in jail for a term of not less than 72 hours or more than two years.
> (d) If it is shown on the trial of an offense under this article that the person has previous-

the penalty prescribed, subsection (e) continued to be a felony offense. *Addington*, 730 S.W.2d at 789–90; Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws at 908, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws at 3603 (current version at TEX. PENAL CODE ANN. § 12.41(1) (Vernon 1994)).

After the enactment of the integrated DWI statute, a division of authority emerged as to the effect of the integrated provisions. The Fort Worth Court of Appeals compared the introductory language of subsections (c), (d), (e), and (f) with the introductory language employed by the enhancement statutes set forth in Chapter 12 of the Penal Code.[9] *Bucek v. State*, 724 S.W.2d 129, 131 (Tex.App.—Fort Worth 1987, no pet.). Subsection (e) began with "if it is shown on the trial of. . . ." TEX.REV.CIV. STAT. ANN. art. 6701*l*–1(e). Similarly the pertinent enhancement provisions of sections 12.42 and 12.43 of the 1974 Penal Code began "if it be shown on the trial of. . . ." Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws at 908, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws at 3603–5.[10] Because the Legislature integrated the felony DWI offense into a single comprehensive statute and because the Legislature employed the same language used in the enhancement provisions of the Penal Code, the Court concluded in dicta that subsection (e) became "merely [a] punishment provision[ ]" and not a separate offense. *Bucek*, 724 S.W.2d at 131 & n. 1.[11]

The Court of Criminal Appeals adopted the reasoning of *Bucek* two years later when it construed subsection (f) and held that this provision did not create a separate offense. *Wilson v. State*, 772 S.W.2d 118, 121–23 (Tex. Crim.App.1989).

One Texas court has followed *Bucek* and *Wilson* in construing subsection (e). *See Pope v. State*, 802 S.W.2d 418, 420–21 (Tex. App.—Austin 1991, no pet.).[12] In *Pope*, the appellant complained that the trial court erred in allowing the State to introduce evidence of his prior DWI convictions during the guilt-innocence stage of his trial. *Id.* at 420. The State argued that subsection (e) was a separate offense and that proof of the prior convictions was an essential element of the felony offense. *Id.* The court held that in light of *Bucek* and *Wilson*, subsection (e) did not create a separate offense. *Id.* at 421.

---

ly been convicted one time of an offense under this article, the offense is punishable by:
(1) a fine of not less than $300 or more than $2,000; and
(2) confinement in jail for a term of not less than 15 days or more than two years.
(e) If it is shown on the trial of an offense under the article that the person has previously been convicted *two or more times of an offense* under this article, the offense is punishable by:
(1) a fine of not less than $500 or more than $2,000; and
(2) confinement in jail for a term of not less than 30 days or more than two years or imprisonment in the state penitentiary for a term of not less than 60 days or more than five years.
(f) If it is shown on the trial of a person punished for an offense under Subsection (c), (d), or (e) of this article that the person committed the offense and as a direct result of the offense another person suffered serious bodily injury, the minimum term of confinement for the offense is increased by 60 days and the minimum and maximum fines for the offense are increased by $500. . . .
TEX.REV.CIV. STAT. ANN. art. 6701*l*–1. Hereinafter we will refer to these subsections individually. For example, we will refer to article 6701*l*–1(e) as "subsection (e)."

9. The court considered an appeal from a conviction for a first offense DWI and for which punishment was enhanced under subsection (f). *See Bucek v. State*, 724 S.W.2d 129, 130–31 (Tex. App.—Fort Worth 1987, no pet.). The court observed that the introductory language of subsections (c), (d), (e), and (f) was identical. *Id.* at 131. Because the pertinent language is identical in all four subsections and because Williams' case arises solely under subsection (e), we limit our discussion to that subsection.

10. The present versions of sections 12.42 and 12.43 begin in a fashion identical to subsection (e), thus: "if it is shown on the trial of. . . ." TEX. PENAL CODE ANN. §§ 12.42, 12.43 (Vernon 1994 & Supp.1997).

11. The court's conclusion is dicta because the issue before the court was the construction of subsection (f), not subsection (e). *See Bucek*, 724 S.W.2d at 131.

12. The Austin court and this court have both adopted the reasoning of *Bucek* and *Wilson* in construing subsection (d). *Porter v. State*, 921 S.W.2d 553, 557–58 (Tex.App.—Waco 1996, no pet.); *Love v. State*, 833 S.W.2d 264, 265–66 (Tex.App.—Austin 1992, pet. ref'd).

However, the court also determined that it was appropriate for the State to prove the prior convictions during the guilt-innocence phase because they were necessary to establish the district court's jurisdiction. *Id.*; TEX.CODE CRIM. PROC. ANN. art. 36.01(a)(1) (Vernon Supp.1997).[13]

Contrary to *Bucek* and its progeny, the Dallas Court of Appeals noted in dicta that subsection (b) was a lesser-included offense of subsection (f). *See Rivera v. State,* 716 S.W.2d 68, 71 (Tex.App.—Dallas 1986, pet. ref'd).[14] Under this reasoning, subsection (f) (and by inference subsection (e)) would be a separate offense from subsection (b). *See May v. State,* 726 S.W.2d 573, 575 n. 3 (Tex. Crim.App.1987).[15]

The Texarkana Court of Appeals reviewed these divergent lines of authority and decided that subsection (e) "is a *special enhancement* because it elevates the offense from a misdemeanor to a felony." *Addington v. State,* 730 S.W.2d 788, 790 (Tex.App.—Texarkana 1987, pet. ref'd). Therefore, the court concluded that the State must prove the prior DWI convictions alleged during the guilt-innocence phase of trial in order to establish the court's jurisdiction. *Id.*; *accord State v. Wheeler,* 790 S.W.2d 415, 416 (Tex.App.—Amarillo 1990, no pet.).

The First Court of Appeals has attempted to reconcile these authorities. *See Will v. State,* 794 S.W.2d 948, 952–53 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). The court first noted that *Bucek* and *Wilson* both involved the construction of subsection (f), not subsection (e). *Id.* at 952. The court observed that subsections (e) and (f) both begin with the language previously noted, "if it is shown on the trial of...." *Id.*; *See* TEX.REV.CIV. STAT. ANN. art.6701*l*–1(e), (f). However, subsection (f) also

> contains the language 'of a person punished for an offense under Subsection ... (e),' clearly denoting that before subsection (f) is to be invoked, a defendant must be convicted of DWI. Therefore, subsection (f) is different from subsection (e) in that subsection (f) is an extraordinary punishment provision that may attach under certain circumstances after an offense has been proven under subsection (e).

*Id.* at 952–53 (citations omitted). Thus, the court concluded that the State must allege and prove prior DWI convictions during the guilt-innocence phase of a felony DWI trial under subsection (e). *Id.* at 953.

### Texas Penal Code § 31.03(e)(4)(D)

The felony theft statute is similar to the felony DWI provision of subsection (e). *Compare* TEX. PENAL CODE ANN. § 31.03(e)(4)(D) (Vernon 1994) *with* TEX.REV. CIV. STAT. ANN. art. 6701*l*–1(e).[16] Section

---

13. In *Porter,* we noted an apparent conflict between the court's determination that subsection (e) is not a separate offense and the " 'jurisdiction' exception, which allows the State to allege and prove a felony under subsection (e)...." *Porter,* 921 S.W.2d at 558 n. 3. We declined to address this issue, however, because it was not before us. *Id.* It now squarely faces us.

14. The Fort Worth court cited the fact that this conclusion was dicta as one of its reasons for not following *Rivera. Bucek,* 724 S.W.2d at 131.

15. This note quotes the Supreme Court's explanation of its decision in an Oklahoma case treating murder in the course of a robbery (felony murder) as a "separate statutory offense, and the [underlying] robbery as a species of lesser-included offense." *May v. State,* 726 S.W.2d 573, 575 n. 3 (Tex.Crim.App.1987) (quoting *Illinois v. Vitale,* 447 U.S. 410, 420, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980)). The Supreme Court was discussing *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). *See May,* 726 S.W.2d at 575 n. 3.

16. The current version of the felony theft statute is cited. After its enactment in 1973, the felony theft statute was amended six times. Other than changing the jurisdictional amounts required to establish a felony and reclassifying the offense from a third degree felony to a state jail felony, these amendments did not alter the substance of the statute. *See* Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 930, *amended by* Act of May 24, 1983, 68th Leg., R.S., ch. 497, § 3, 1983 Tex. Gen. Laws 2917, 2919, *amended by* Act of May 28, 1983, 68th Leg., R.S., ch. 558, § 11 1983 Tex. Gen. Laws 3237, 3245, *amended by* Act of May 27, 1985, 69th Leg., R.S., ch. 599, § 1, 1985 Tex. Gen. Laws 2244, 2245, *amended by* Act of May 29, 1989, 71st Leg., R.S., ch. 245, § 1, 1989 Tex. Gen. Laws 1161, 1161, *amended by* Act of May 23, 1991, 72nd Leg., R.S., ch. 565, § 1, 1991 Tex. Gen. Laws 2003, 2003, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3637–38 (current version at TEX. PENAL CODE ANN. § 31.03(e)(4)(D) (Vernon 1994)).

31.03(e)(4)(D) provides that the theft alleged is a felony "if ... the defendant has been previously convicted two or more times of any grade of theft...." TEX. PENAL CODE ANN. § 31.03(e)(4)(D). Subsection (e) provided that the DWI alleged is a felony if the defendant "has previously been convicted two or more times of [DWI]." TEX.REV.CIV. STAT. ANN. art. 6701*l*–1(e). In addition, both provisions are part of integrated statutory schemes. *Compare* TEX. PENAL CODE ANN. § 31.03 (Vernon 1994 & Supp.1997) *with* TEX. REV.CIV. STAT. ANN. art. 6701*l*–1.

The Court of Criminal Appeals has determined that the felony theft statute is not an enhancement provision. *Gant v. State,* 606 S.W.2d 867, 869 n. 2, 871 & n. 9 (Tex.Crim. App. [Panel Op.] 1980); *see also Diamond v. State,* 530 S.W.2d 586, 587 (Tex.Crim.App. 1975) (citing *Hill,* 158 Tex.Crim. at 315, 256 S.W.2d at 94). Rather, this provision creates a new felony offense and vests the district court with jurisdiction. *See Gant,* 606 S.W.2d at 871; *Diamond,* 530 S.W.2d at 587. The requirement that the State prove at least two prior theft convictions under section 31.03(e)(4)(D) is "a jurisdictional element—a 'forbidden conduct'—of the felony theft proscribed...." *Gant,* 606 S.W.2d at 872 n. 9; *accord Luedke,* 711 S.W.2d at 659 (citing *Hill,* 158 Tex.Crim. at 315, 256 S.W.2d at 94).

At least two Texas courts have compared the felony theft and felony DWI statutes when deciding the issue of multiple use of prior theft convictions under section 31.03(e)(4)(D).[17] *See Moore v. State,* 916 S.W.2d 537, 540 n. 3 (Tex.App.—Dallas 1995, no pet.); *State v. Nelms,* 775 S.W.2d 25, 26–27 & n. 3 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). In both cases, the courts decided that this provision does not enhance punishment, but rather "elevates" an ordinarily misdemeanor offense to the level of a felony. *Moore,* 916 S.W.2d at 539–40; *Nelms,* 775 S.W.2d at 27. As a result, "the State is not prohibited from reusing prior theft convictions to elevate the [primary offense of theft to a felony]." *Id.*; *accord Moore,* 916 S.W.2d at 540. Both courts relied on *Gant* and *Hill* in reaching this conclu-

sion. *See Moore,* 916 S.W.2d at 540 n. 3; *Nelms,* 775 S.W.2d at 26–27. The Dallas court also cited *Diamond* to support its decision. *Moore,* 916 S.W.2d at 539.

### Conclusion

Subsection (e) was not drafted as a "separate" offense like its predecessor, article 6701*l*–2. Rather, it was part of an integrated DWI statute. Nevertheless, it was remarkably similar to the felony theft statute, which has continually been held to create a new and distinct felony offense *See Diamond,* 530 S.W.2d at 587; *Moore,* 916 S.W.2d at 539. Thus, the rationale of *Hill,* not *Kinney,* remains applicable. Like article 802b construed in *Hill,* subsection (e) "creates a new and independent crime of the grade of felony, an essential element of which is that the person charged has previously been [twice] convicted of [DWI]." *Hill,* 158 Tex.Crim. at 315, 256 S.W.2d at 94; *accord Luedke,* 711 S.W.2d at 659; *Gant,* 606 S.W.2d at 871 & n. 9; *Moore,* 916 S.W.2d at 540; *but cf. Pope,* 802 S.W.2d at 421.

*Hill* also controls because the question presented arises under article 6701*l*–1 rather than Chapter 12 of the Penal Code. *See Hill,* 158 Tex.Crim. at 315, 256 S.W.2d at 94 (*Kinney* rule expressly limited to cases arising under the enhancement provisions of the Penal Code).

■ For these reasons, "we hold that the State is not prohibited from reusing prior [DWI] convictions to elevate the offense of [DWI] to a[ ] felony under [subsection (e) ]." *Nelms,* 775 S.W.2d at 27. We overrule Williams' fourth point.

### THE VALIDITY OF THE PRIOR CONVICTIONS

Williams' fifth point alleges that the 1984 and 1986 misdemeanor DWI convictions used to make his 1987 DWI a felony are void because he was not represented by counsel when he pleaded to those prior charges. Apparently, Williams believes that his 1987 felony DWI conviction cannot be used to felonize the instant DWI charge if the prior misdemeanor DWI convictions are void.

17. *See* note 16, *supra.*

The certified copy of the judgment from the 1984 conviction reflects that Williams "knowingly, intelligently and voluntarily waived" his right to counsel. According to Williams' driving record, the other prior misdemeanor conviction occurred in 1986. Williams did not offer a copy of the 1986 judgment in evidence.[18]

The Sixth Amendment provides that "the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. This Sixth Amendment right to counsel applies to the states through the due process clause of the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963). Article 1.051(a) of the Code of Criminal Procedure similarly provides that an accused is entitled to be represented by counsel in adversarial proceedings. TEX. CODE CRIM. PROC. ANN. art. 1.051(a) (Vernon Supp.1997).

To collaterally attack the validity of prior convictions on the basis of a denial of the right to counsel, the accused must prove that "he did not voluntarily, knowingly, and intelligently waive his right to counsel." *Garcia v. State*, 909 S.W.2d 563, 566 (Tex. App.—Corpus Christi 1995, pet. ref'd). When prior convictions are collaterally attacked, the judgments reflecting those convictions are presumed to be regular, and the accused bears the burden of defeating that presumption. *Campise v. State*, 745 S.W.2d 534, 535 (Tex.App.—Houston [1st Dist.] 1988, no pet.).[19]

"Bald assertions by a defendant that he was without the assistance of counsel at his prior convictions are not sufficient to overcome the presumption of regularity of the records before the court in the case." *Swanson v. State*, 722 S.W.2d 158, 164 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd)

(citing *Disheroon v. State*, 687 S.W.2d 332, 334 (Tex.Crim.App.1985)).

In this case, the judgment properly before us from the 1984 conviction recites that Williams "knowingly, intelligently and voluntarily waived" his right to counsel. Williams offered no evidence to overcome the presumption of regularity which attaches to this recital. *See id.* We have no evidence before us by which we can determine whether Williams was improperly denied counsel in his 1986 conviction. *See Welch v. State*, 908 S.W.2d 258, 261 n. 1 (Tex.App.—El Paso 1995, no pet.).

For these reasons, we overrule Williams' fifth point.

## THE APPROPRIATE RANGE OF PUNISHMENT

Williams complains in his sixth point that because the prior DWI convictions are void, the court misstated the range of punishment when it submitted the case to the jury in the punishment phase as a felony offense.

The jury found Williams guilty of the DWI alleged and determined that he had been previously convicted of DWI on the two occasions alleged. We have already determined that the evidence is sufficient to support the jury's findings. We have also determined that the prior DWI convictions were valid to make the instant offense a felony. Thus, the court should have instructed the jury on the range of punishment for felony DWI in the punishment charge.

The court's punishment instructions substantially tracked the language of subsection (e). *See* TEX.REV.CIV. STAT. ANN. art. 6701*l*–1(e). Thus, the court did not misstate the range of punishment to the jury. We overrule Williams' sixth point.

---

18. Williams provides a copy of the 1986 judgment as an appendix to his brief. This document is not properly before us. *See Welch v. State*, 908 S.W.2d 258, 261 n. 1 (Tex.App.—El Paso 1995, no pet.).

19. The accused also bears the burden at trial "to show [the prior conviction's] invalidity in the record and preserve the error for appeal." *Sparks v. State*, 809 S.W.2d 773, 774 (Tex.App.—

Houston [14th Dist.] 1991, pet. ref'd). Williams did not provide the trial court with a copy of the 1986 judgment, nor did he argue that the 1986 judgment was void. However, the State does not argue that he has failed to preserve error. Thus, we will consider his point. *See Clark v. State*, 878 S.W.2d 224, 225 n. 1 (Tex.App.—Dallas 1994, no pet.) (citing *Tallant v. State*, 742 S.W.2d 292, 294 (Tex.Crim.App.1987)).

## THE "AMENDMENT" OF
## THE INDICTMENT

Williams' alleges in his second point that the State amended the indictment after his trial commenced in violation of article 28.10(a) of the Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 28.10(a) (Vernon 1989).

After voir dire and before the reading of the indictment to the jury, the State asked the court to strike the portion of the indictment which alleged that Williams was intoxicated "by having an alcohol concentration of .10 or more." *See* Act of March 13, 1985, 69th Leg., R.S., ch. 10, § 1, 1985 Tex. Gen. Laws 375, 375 (former TEX.REV.CIV. STAT. ANN. art.6701*l*–1(a)(2)(B)), *repealed by* Act of May 29, 1993, 73rd Leg., ch. 900, § 1.15, 1993 Tex. Gen. Laws at 3704. ("TEX.REV.CIV.STAT.ANN. art. 6701*l*–1(a)") Williams did not object to the State's abandonment of this allegation.

Article 28.10(a) provides that when the State amends an indictment, the accused is entitled to "not less than 10 days" to respond to the amended allegations. TEX.CODE CRIM. PROC. ANN. art. 28.10(a).

■ When a statute provides two means for the commission of an offense and the State alleges those means conjunctively, the State may abandon any one of the alleged means. *Eastep v. State,* 941 S.W.2d 130, 133 (Tex.Crim.App.1997). When the State abandons such an allegation, the provisions of article 28.10(a) are not implicated. *Id.* at 135.

■ Article 6701*l*–1(a)(2) provided two different means by which the State could prove the accused was intoxicated:

(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol ... into the body; or

(B) having an alcohol concentration of 0.10 or more.

TEX.REV.CIV. STAT. ANN. art.6701*l*–1(a)(2); *Kilgo v. State,* 880 S.W.2d 828, 829 (Tex. App.—Dallas 1994, pet. ref'd).

The State abandoned the allegation of the indictment that Williams' alcohol concentration was 0.10 or more and proceeded to trial solely on the allegation that he had lost the normal use of mental or physical faculties because of the consumption of alcohol. *See Eastep,* 941 S.W.2d at 133. Thus, Williams was not entitled to the ten days provided by article 28.10(a). *Id.* at 135. We overrule Williams' second point.

## ARGUMENT OF COUNSEL

Shimek's fourth point contends that the court erred in overruling his motion for mistrial when the State committed three instances of improper jury argument.

In Williams' closing argument, he discussed the intoxilyzer as follows:

Ladies and gentlemen, what was all that testimony about a breathalyzer [sic]? There is no evidence, nothing to say, nothing one way or another, to say what the results of that breath test were. They said he had a test. It was unsuccessful. You saw what the officer said it required and how long he said it takes to require to blow, at least eighteen seconds, and he didn't receive any valid tests, nothing to confirm. He said there was one valid test, but he couldn't confirm it. It's a rabbit trail. The State wants you to believe or speculate that maybe he failed the test. It's just as reasonable to believe he didn't fail that test. There is no evidence one way or the other. That is a rabbit trail the State wants you to follow down and say, Well, he was too drunk to even blow in the tube.

The State responded to Williams' argument in the following manner:

The State brings you all the evidence we have, members of the jury. We tried to describe the scene to the best of our ability to give you a full understanding of what was going on out there on June 6th of 1994, description, visuals of where it started, visuals and descriptions of where it ended. That's why we bring that evidence. That's why we brought up the evidence about the breathalyzer. [sic] Now, you know, if we— if the State did not bring that evidence about that breathalyzer being taken, don't you think he would have brought it up?

The court sustained Williams' objection to this argument and instructed the jury to disregard it. The court overruled Williams' motion for mistrial. Shimek alleges that this argument improperly commented on Williams' failure to testify.

The State continued its discussion about the intoxilyzer:

Let's talk about the breathalyzer. The reasonable conclusion that Mr. Shimek has painted that it's insignificant evidence, that's what he stated on his closing argument, but let's talk about what happened on that breathalyzer and about reasonable conclusions.

Trooper Dawson stated on direct testimony that Mr. Williams hadn't had any problem breathing from the time he started out there on that scene until the time he is transported back to the Brazos County booking area. He stands before a breathalyzer machine with a reading right there in view. He blows. He's able to submit the first specimen. He blows, and it gives a reading. It's clearly visual to Trooper Dawson, and I submit to you from the evidence that it's reasonable to conclude that it's clearly visible to Mr. Williams as well, that reading of what he just blew. All of a sudden, Mr. Andrew Williams cannot—

Williams objected that this argument called for speculation. The court asked the prosecutor to rephrase the statement. The prosecutor continued:

It's reasonable to conclude and the evidence has shown that Mr. Williams then cannot blow a steady stream of air on that second specimen just after he had blown one beforehand. I think you know what was going on there, members of the jury.

The court sustained Williams' objection to the prosecutor's last statement and instructed the jury to disregard it. The court overruled Williams' motion for mistrial. Shimek asserts that this argument was not a reasonable inference from the evidence.

Later, the prosecutor described Williams' driving thus:

Get a mental image of going down east Highway 21 for whatever reason late in the day and here comes a car weaving down the road. How does that make you feel, members of the jury? Well, I know how it made Steve Cruse feel. I know how it would make me feel. Nevertheless, people are moving out of the way.

The court sustained Williams' objection to this argument and instructed the jury to disregard it. The court overruled Williams' motion for mistrial. Shimek argues that this statement is not supported by the evidence.

■■■■ The four generally accepted areas of permissible jury argument are:

(1) summation of the evidence;

(2) reasonable deduction from the evidence;

(3) answer to opposing counsel's argument; and

(4) plea for law enforcement.

*Kinnamon v. State,* 791 S.W.2d 84, 89 (Tex. Crim.App.1990). "Counsel has wide latitude in drawing inferences from the evidence that are reasonable, fair, legitimate and made in good faith." *Sterling v. State,* 830 S.W.2d 114, 120 (Tex.Crim.App.1992).

■■■■ An instruction to disregard usually cures an objectionable argument "unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment." *Kinnamon,* 791 S.W.2d at 89. Additionally, before an improper argument rises to the level requiring reversal, it must be "extreme or manifestly improper,, or inject new and harmful facts into evidence." *Id.* (quoting *McKay v. State,* 707 S.W.2d 23, 36 (Tex.Crim.App.1985)).

### COMMENT ON THE ACCUSED'S FAILURE TO TESTIFY

Article 38.08 of the Code of Criminal Procedure prohibits the State from alluding to or commenting on an accused's failure to testify. TEX.CODE CRIM. PROC. ANN. art. 38.08 (Vernon 1979). Such a comment also violates an accused's state and federal constitutional rights. *Martinez v. State,* 851 S.W.2d 387, 389 (Tex.App.—Corpus Christi 1993, pet. ref'd).

■■■ The test is whether "the jury would naturally and necessarily take [the State's

argument] as a comment on the accused's failure to testify." *Martinez,* 851 S.W.2d at 389. The argument is viewed from the perspective of the jury, "and the language must be more than an implied or indirect allusion to the accused's silence." *Id.* The State may properly allude to the accused's silence in response to opposing counsel's argument. *Id.* at 389–90.

■ When we review the State's argument in context, it seems apparent that the prosecutor was attempting to explain why the State introduced the evidence of the unfinished intoxilyzer test. This was in response to Williams' argument questioning why the State had introduced this evidence. *Kinnamon,* 791 S.W.2d at 89. Furthermore, we cannot say that the language employed was such that the jury would naturally and necessarily take to be a comment on Williams' failure to testify. *See Martinez,* 851 S.W.2d at 390.[20]

### REASONABLE DEDUCTIONS FROM THE EVIDENCE

#### The Failure to Provide a Second Specimen

■ The State suggests that its argument to the jury which questioned whether Williams was actually unable to provide the second breath specimen is a reasonable deduction from the evidence.

■ As noted, article 6701*l*–5, § 3(g) permitted the State to comment on the accused's intentional failure to provide a breath specimen. Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 4, 1983 Tex. Gen. Laws at 1584 (former TEX.REV.CIV. STAT. ANN. art.6701*l*–5, § 3(g)), *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1025, 1871 (current version at TEX. TRANSP. CODE ANN. § 724.061 (Vernon Supp. 1997)). We cannot say that the inferences drawn by the State's argument "are [un]reasonable, [un]fair, [il]legitimate[, or] made in [bad] faith." *Sterling,* 830 S.W.2d at 120. Furthermore, the court's instruction to disre-

gard the argument cured any potentially prejudicial effect. *Kinnamon,* 791 S.W.2d at 89.

#### Forcing Drivers to Move Out of the Way

■ Similarly, the State suggests that its argument that other drivers on the highway at the same time as Williams had to take evasive action is a reasonable deduction from the evidence.

■ Cruse' testimony established that Williams was weaving back and forth between the centerline and the shoulder, that he was driving more slowly than the flow of traffic, and that other cars passed his car. We find it to be a reasonable inference that if a car is driving in the manner described by Cruse, passing cars might well take extra precautions to avoid the danger of a collision. We cannot say that the inferences drawn by the State's argument "are [un]reasonable, [un]fair, [il]legitimate[, or] made in [bad] faith." *Sterling,* 830 S.W.2d at 120. Furthermore, the court's instruction to disregard the argument cured any potentially prejudicial effect. *Kinnamon,* 791 S.W.2d at 89.

For each of the reasons stated, we overrule Shimek's fourth point.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Williams' seventh point asserts that Shimek has rendered ineffective assistance of counsel because he has not consulted with Williams about which points to raise in this appeal.

■ The Sixth Amendment entitles a criminal defendant to effective assistance of counsel when pursuing a first appeal of right. *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985); *Ward v. State,* 740 S.W.2d 794, 796 (Tex.Crim.App. 1987).

In assessing the effectiveness of appellate counsel, we apply the test set forth by the Supreme Court in *Strickland v. Washington,*

---

20. We also note that the State is permitted to comment on the accused's refusal or intentional failure to provide a valid breath specimen in a DWI prosecution. Act of May 27, 1983, 68th Leg., R.S., ch. 303, § 4, 1983 Tex. Gen. Laws 1568, 1584 (former TEX.REV.CIV. STAT. ANN. art. 6701*l*–5, § 3(g)), *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1025, 1871 (current version at TEX. TRANSP. CODE ANN. § 724.061 (Vernon Supp.1997)).

**904**

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Jarrett,* 891 S.W.2d 935, 938 (Tex. Crim.App.1994). *Strickland* requires us to determine whether:

(1) appellate counsel's performance was deficient; and if so,

(2) whether there is a reasonable probability the results would have been different but for counsel's deficient performance.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

We strongly presume that counsel's conduct lies within the "range of reasonable representation." *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). The accused must overcome this presumption by affirmatively showing that his representation fails the two-part test set forth in *Strickland. Id.* (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065).

 To be effective, appellate counsel need not raise every non-frivolous issue urged by his client. *See Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). As Chief Justice Burger observed in *Jones:*

> There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. This has assumed a greater importance in an era when oral argument is strictly limited in most courts—often to as little as 15 minutes—and when page limits on briefs are widely imposed.... A brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions.
>
> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies [the Sixth Amendment].

*Jones,* 463 U.S. at 752–754, 103 S.Ct. at 3313–14.

 Shimek's brief effectively presents four plausible points of error. Williams raises six [21] additional points in his *pro se* brief and suggests that he could present more if he had additional time to review the record. Williams does not, however, affirmatively demonstrate that Shimek's appellate representation is deficient or prejudicial. *See McFarland,* 928 S.W.2d at 500. Furthermore, we have reviewed the record and find nothing to suggest a reasonable probability that any additional point of error would require us to reverse Williams' conviction or punishment. *Id.* at 500 & n. 13. Thus, we overrule Williams' seventh point.

We affirm the judgment.

---

**21.** Williams' third point and Shimek's first point both complain about the lost videotape. Thus, six of Williams' seven points raise additional grounds for our review.