

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00255-CR

THE STATE OF TEXAS                                                     STATE

V.

RYAN T. HARRISON                                                     APPELLEE

----------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In five issues, the State contends that the trial court improperly suppressed post-arrest verbal statements appellee Ryan T. Harrison made to Lewisville police, improperly suppressed cell phone records related to appellee, and made a clerical error by granting appellee's spoliation motion. We affirm in part and reverse in part.

---

[1]See Tex. R. App. P. 47.4.

## Background

Lewisville police detective William Wawro investigated the murder of Germaine Dawson, who was found dead of a gunshot wound in his car on March 27, 2009. During the investigation, Detective Wawro talked to Josh Madden, who admitted arranging a drug deal between Dawson and appellee. Madden showed Detective Wawro numbers on his cell phone that he said belonged to Dawson and appellee. Texas Ranger Tracy Murphree, who was assisting with the investigation, obtained Dawson's cell phone records without a warrant or court order and gave them to Detective Wawro. Detective Wawro obtained an arrest warrant for appellee the same day.

Several days later, Detective Wawro obtained search warrants for the records of four cell phone numbers: appellee's, Dawson's, Madden's, and the number of a phone belonging to one of appellee's friends who had let appellee use his phone. By "pinging" or live tracking one of the numbers, police were able to locate and arrest appellee in Dallas on March 31, 2009.

Instead of taking appellee to a magistrate in Dallas or Denton counties, police took him to Detective Wawro, who questioned appellee for seven or eight minutes before reading him his rights—which appellee waived—and then continued questioning him. Appellee gave an oral statement to Detective Wawro. Police did not take appellee to a magistrate until the next day.

After obtaining appellee's statement, Detective Wawro obtained additional search warrants for an old cell phone number of appellee's and a cell phone

2

number of another friend of appellee's whose phone appellee had been using. Before trial, the State obtained records for two of the six cell phone numbers by judicial order pursuant to article 18.21(5) of the code of criminal procedure and section 2703(d) of the federal Stored Communications Act (SCA). 18 U.S.C.A. § 2703(d) (West Supp. 2014); Tex. Code Crim. Proc. Ann. art. 18.21(5) (West Supp. 2013).

The State tried appellee for capital murder, and a jury convicted him in 2010. The trial judge sentenced appellee to life in prison. In 2012, this court reversed appellee's conviction and remanded the case for a new trial because appellee's right to a public trial had been violated. *Harrison v. State*, No. 02-10-00432-CR, 2012 WL 1034918, at *13 (Tex. App.—Fort Worth Mar. 29, 2012, no pet.) (mem. op., not designated for publication). On remand, appellee filed the motions to suppress and spoliation motion giving rise to this appeal.[2]

## Motions to Suppress

Appellee filed four specific pretrial motions to suppress: (1) a motion to suppress evidence obtained as a result of his arrest and interrogation on the primary grounds that the arrest warrant did not contain probable cause, Ranger Murphree illegally obtained Dawson's cell phone records without a warrant, and appellee's arrest and interrogation violated code of criminal procedure article

---

[2]By the time these pretrial motions were heard and ruled on, a new trial judge was presiding and a new prosecutor had been assigned to the case. The prosecutor who was assigned to the first trial was no longer with the Denton County District Attorney's office.

15.18 and *Miranda*; (2) a motion to suppress information obtained as a result of the first four search warrants (for cell phone numbers ending in 1836, 2622, 6239, and 8326) on the ground that the probable cause affidavits are forms that fail to establish sufficient facts or trustworthy information to justify the issuance of a warrant or a warrant for the particular items seized; (3) a motion to suppress cell phone records obtained by the State for the first trial in accordance with 18 U.S.C.A. § 2703(d) (for numbers ending in 1836 and 6239) on the ground that they were obtained in violation of that section and on less than probable cause; and (4) a motion to suppress evidence obtained from the first four search warrants (for numbers ending in 1836, 2622, 6239, and 8326) on the ground that the records were obtained and maintained in a haphazard fashion, making it impossible to authenticate them, and thus violating articles 18.09 through 18.11 of the code of criminal procedure. Appellee also filed a motion alleging spoliation of the evidence, including the records for the phone numbers that Detective Wawro obtained via the search warrants; during the pretrial hearings, appellee also asked that these records be suppressed in accordance with his arguments in the spoliation motion.

The trial court granted the first motion, suppressing appellee's post-arrest statements to Detective Wawro on March 31, 2009. The trial court also granted the spoliation motion as to all four numbers requested by appellee (1836, 2622, 6239, and 8326), but also as to two additional numbers argued at the suppression hearing (0370, which was Dawson's number, and 4170, which was

4

Madden's number),[3] thus suppressing "all things obtained" via the search warrants issued for those six numbers.  The trial court further granted the second motion as to numbers 0370, 6239, and 8326, and the third motion as to number 6239.

**Standard of Review**

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling.  *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings.  *Kelly*, 204 S.W.3d at 818–19.  We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  *Id.* at 818.

When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings.  *State v. Garcia-Cantu*, 253

---

[3]Although appellee did not move to suppress records related to 0370 and 4170 in the motions he filed, he argued for suppression of all six numbers throughout the pretrial hearing.  The State did not object.

5

S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

Here, the trial judge stated on the record that he considered Detective Wawro's testimony to be true. Accordingly, we will review the issues in light of that finding.

**Motion to Suppress on Illegal Arrest Grounds**

The State contends that the trial court abused its discretion by granting the motion to suppress appellee's post-arrest statements because "officers properly obtained [a]ppellee's cell phone location by pinging the phone he was using in order to find and arrest him, he was arrested pursuant to a valid arrest warrant supported by probable cause, and his subsequent oral statement was knowingly and voluntarily given." Appellee alleged that Detective Wawro violated articles 18.20 and 18.21 of the code of criminal procedure, penal code sections 16.02 through 16.04, and sections 2702, 2703, and 3117 of the SCA by using the phone records obtained by Ranger Murphree in violation of those statutes to elicit

6

statements from appellee after giving him *Miranda* and 38.22 warnings.  Appellee further alleged that Detective Wawro violated sections 2702, 2703, and 3117 of the SCA by requesting pinging of one of the cell phones to locate appellee without first obtaining a court order or a warrant authorizing the pinging.  We will address the alleged federal violations first because they are dispositive.

**Applicable Law**

The SCA was enacted "to protect the privacy of users of electronic communications by criminalizing the unauthorized access of the contents and transactional records of stored wire and electronic communications, while providing an avenue for law enforcement entities to compel a provider of electronic communication services to disclose the contents and records of electronic communications."  *In re Application of the U.S. for an Order Pursuant to 18 U.S.C.A. § 2703(d)*, 707 F.3d 283, 286–87 (4th Cir. 2013) (orig. proceeding).  A provider covered by the SCA may disclose *noncontent* records to *nongovernmental entities* without restriction.  18 U.S.C.A. § 2702(c)(6) (West Supp. 2014) (emphasis added); Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1222 (2004).  But section 2702(b)(7)–(8) and (c) of the SCA prohibits providers from voluntarily disclosing customer records to a governmental entity unless an exception applies.  18 U.S.C.A. § 2702(b)(7)–(8) & (c); Kerr, *supra*, at

1220–21.[4]  The exception urged by the State here is if "the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency."  18 U.S.C.A. § 2702(c)(4).  This exception, however, does not authorize law enforcement to access such data without a warrant in the course of routine criminal investigations.  *In re Application of the United States for an Order Authorizing (1) Installation and Use of a Pen Register and Trap and Trace Device or Process, (2) Access to Customer Records, and (3) Cell Phone Tracking*, 441 F. Supp. 2d 816, 834 (S.D. Tex. 2006).

Section 2703(c) of the SCA governs the limited circumstances under which law enforcement entities can compel providers to give them information regarding customer cell phone records:  (1) by obtaining a valid warrant under federal or state law, (2) by obtaining a court order upon a showing of "specific and articulable facts showing that there are reasonable grounds to believe that . . . the records . . . are relevant and material to an ongoing criminal investigation," (3) by obtaining the consent of the subscriber or customer, or

[4] *But cf. United States v. Thousand*, No. 13-2599, 2014 WL 948328, at *3 (7th Cir. Mar. 12, 2014) ("We have not found any federal appellate decision accepting Thousand's premise that obtaining cell-site data from telecommunications companies—under any factual scenario—raises a concern under the *Fourth Amendment.*" (emphasis added)); *In re United States for Historical Cell Site Data*, 724 F.3d 600, 615 (5th Cir. 2013) (holding that *Fourth Amendment* is not offended by section 2703(d)'s provision allowing police to obtain historical cell site data via order on less than probable cause); *Barfield v. State*, 416 S.W.3d 743, 749 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (holding same when State obtained cell tower records via subpoena).

(4) by obtaining an administrative subpoena.   18 U.S.C.A. § 2703(c), (d); *see* Kerr, *supra*, at 1218–19.

Although the SCA itself does not require exclusion of evidence as a remedy for its violation,[5] article 38.23 of the code of criminal procedure provides that no evidence obtained by an officer in violation of the constitution or laws of the State of Texas, or the Constitution or laws of the United States, may be admitted in evidence against the accused in a criminal case.   Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).

It is undisputed that Detective Wawro did not obtain a warrant or court order to ping the cell phone numbers that led to appellee's arrest.   Additionally, there is no evidence that Ranger Murphree obtained a court order or warrant for Dawson's cell phone records that he provided to Detective Wawro.   All of the evidence shows that the providers voluntarily gave this information to law enforcement.    Accordingly,   we   review   whether   section   2702(c)'s   exigent circumstances exception applies.[6]

---

[5]*See State v. Marinello*, 09-1260 (La. App. 3 Cir. 10/6/10); 49 So. 3d 488, 508; *People v. Moorer*, 959 N.Y.S.2d 868, 876 (N.Y. Cnty. Ct. 2013); Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1241 (2004); *cf. City of Ontario v. Quon*, 560 U.S. 746, 764, 130 S. Ct. 2619, 2632 (2010) (holding that even if violation of SCA had occurred, search would not be per se unreasonable under the Fourth Amendment).

[6]Appellee argues that the State failed to preserve this complaint because it has not challenged every possible reason asserted by appellee that the trial court could have suppressed the evidence.  Although we cannot reverse a trial court's suppression ruling unless we determine that its decision was incorrect under any

9

**Applicable Facts**

Detective Wawro testified at the suppression hearing that he met with Madden on March 27, the same day Lewisville police discovered Dawson's body, and Madden gave Detective Wawro phone numbers for both appellee and Dawson. Detective Wawro got the phone records from Ranger Murphree the same day.[7] Detective Wawro was also able to get an arrest warrant for appellee the same day, but police were not able to arrest him until March 31, 2009. A Dallas police officer found appellee after officers "did a ping on his phone that [they] knew he was using and it put him in a location and area, and phone records came back and gave [Detective Wawro] an address directly to that area." Detective Wawro believed that he could obtain a ping without prior judicial authorization by asking the phone company to do so if there were exigent circumstances.

When asked what exigent circumstances allowed him to request the pinging, Detective Wawro answered, "That that person [appellee] killed

theory applicable to the case, *see Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004), we need not review such alternate grounds unless we determine the trial court erred as alleged by the State in its ground for review. Because the State preserved its exigent circumstances argument in the trial court, we review it first, rather than any alternate grounds raised by appellee in the trial court. *See* Tex. R. App. P. 33.1(a)(1)(A).

[7]Detective Wawro had been aware that Ranger Murphree was going to obtain the records.

10

somebody and I don't know if they're going to kill somebody else." However, he

could not say specifically whose life he thought was in danger.

The arresting officers did not take appellee before a magistrate before

Detective Wawro interviewed him. Detective Wawro also asked appellee some

questions before giving him *Miranda* and article 38.22 warnings.[8] Detective

Wawro testified that he asked appellant six or seven minutes of questions before

giving him the warnings; those questions consisted of "[p]ersonal information,

where he lived, education, his hobbies, what he liked to do, those kinds of

questions," and according to Detective Wawro, were for the purpose of

determining appellant's mental capacity. Detective Wawro did not feel as if they

were interrogation questions. He agreed that when he actually got to the

"specific questions about what [he] wanted to know from him," he read appellee

his *Miranda* and 38.22 warnings.[9] Detective Wawro also said,

---

[8]Although Detective Wawro's interview of appellee was videotaped, neither the State nor appellee attempted to introduce the videotaped interview into evidence at the initial suppression hearing. The next day, after the trial court had already ruled, at a hearing where the parties were presenting further argument, the State attempted to introduce the videotaped statement into evidence and asked the trial court to take judicial notice of a transcription of the videotape that was done by the court reporter at the prior trial. The trial court refused to admit the videotape and denied the State's request to take judicial notice of the transcription. Because the State does not complain about this ruling on appeal, and because the trial court stated on the record that it was taking Detective Wawro's testimony and counsels' representations during argument as true, we are limited to that testimony and those representations in our review. *See, e.g.*, Tex. R. App. P. 33.1(a).

[9]Detective Wawro did not obtain a written waiver of appellee's 38.22 rights.

11

When I read him his rights, he said he understood those rights. And I asked if he wanted to speak with me. And I don't have the transcript in front of me, exactly what he said, but he inferred, Well, that's what I'm trying to figure out. And I said, Well, you know, you can stop this interview anytime you'd like. And do you want to talk to me? He said, All right. And so then I began to ask him interrogation questions.

In part of the interview, Detective Wawro used the phone records he had obtained from Ranger Murphree to question appellee.

During argument on the motion, the defense urged that neither the March 27, 2009 arrest warrant nor the March 30, 2009 search warrants gave law enforcement the authority to find appellee's location by pinging his cell phone and that the invalidity of the pinging invalidated the arrest itself, and thus the subsequent custodial interrogation. The State responded that the officers believed they had exigent circumstances justifying the pinging, but the lack of authorization for the pinging pertains only to how the officers found appellee, not whether they had probable cause to arrest him.

The trial judge believed that the violations of law, particularly the delay in taking appellee before a magistrate and not informing him why he had been arrested, rendered the unwarned part of appellee's statement unknowing and involuntary. Thus, the court initially suppressed only the unwarned part of the statement. But after appellee and the State agreed that Detective Wawro had used the phone records obtained by Ranger Murphree during the post-warning part of appellee's interview, the trial court ordered the remainder of the statement suppressed.

**Analysis**

The State contends that the following testimony from Detective Wawro shows that the providers reasonably believed that exigent circumstances—as defined in section 2702(c) of the SCA—warranted their voluntary disclosure of Dawson's phone records to Ranger Murphree and appellee's ping locations to law enforcement searching for him: officers were investigating a homicide caused by a bullet wound to the head, officers had probable cause for appellee's arrest, and appellee could have killed someone else.

Courts have found exigent circumstances existed under the SCA when (1) a missing child's mother told police that her daughter telephoned and said that she had been kidnapped, taken across state lines, and was being forced to work as a prostitute, *United States v. Gilliam*, No. 11 Crim. 1083, 2012 WL 4044632, at *1–2 (S.D.N.Y. 2012); (2) a kidnapping involving a ransom request had occurred, *In re Application of United States for a Nunc Pro Tunc Order for Disclosure of Telecomm. Records*, 352 F. Supp. 2d 45, 47 (D. Mass. 2005); (3) police were investigating a suspected retaliation murder by someone known to be armed and dangerous, who had committed criminal assault in the past, and who likely knew the identities and potential whereabouts of law enforcement's confidential informants, *U.S. v. Caraballo*, 963 F. Supp. 2d 341, 362–63 (D. Vt. 2013); (4) a store clerk had been shot during a suspected gang-related robbery that fit the description of prior robberies and the detective believed another robbery was forthcoming, *U.S. v. Takai*, 943 F. Supp. 2d 1315, 1323 (D. Utah

13

2013); and (6) police were investigating a double homicide and had written to the provider that the suspect "presents an immediate danger to any law enforcement officer who may come into contact with this person," *Registe v. State*, 734 S.E.2d 19, 20–21 (Ga. 2012). In contrast, at least one court has held that exigent circumstances did not exist for police to obtain a ping of a suspect's cell phone when the police had already located the suspect but were wanting to obtain additional evidence, which they then obtained as a result of the pinging. *Moorer*, 959 N.Y.S.2d at 875.

Here, there is no evidence of what law enforcement told the providers to justify the need for voluntary disclosure. Additionally, even if we can infer that Detective Wawro or Ranger Murphree had expressed to the providers the information Detective Wawro relied on in the hearing, the only information pertinent to the statutory exception is that officers were investigating a murder and that the murder weapon was a gun. Unlike the cases above in which the evidence showed a reasonable belief of an emergency involving the future or further danger of death or serious bodily injury, the record here shows no evidence warranting such a reasonable belief. *Cf. Jefferson v. State*, 783 S.W.2d 816, 821 (Tex. App.—San Antonio 1990, pet. ref'd) (finding no exigent circumstances justifying arrest of Jefferson on traffic warrants when, after finding sole victim strangled in his own apartment, police developed Jefferson as suspect in the murder and arrested him for the sole purpose of interrogating him about the murder). Thus, we conclude and hold that the evidence at the

14

suppression hearing supports appellee's assertion that officers used information obtained in violation of section 2702 of the SCA to locate and arrest him and also to obtain statements from him after the arrest.

The State does not contend that article 38.23 does not apply to exclude the evidence if section 2702 was violated other than to deny that Detective Wawro used "false, incriminating documents" or "outright lies concerning the existence of evidence," citing *Wilson v. State*, 311 S.W.3d 452, 462 (Tex. Crim. App. 2010). Although *Wilson* involved an officer's use of a fabricated document in violation of penal code section 37.09 to obtain a confession, its holding was not limited to that particular violation of law only; instead, *Wilson* provides a framework for analyzing whether article 38.23 applies to exclude evidence obtained in violation of any federal or state law. *See generally id.* at 458–65.

Because police used cell phone location information obtained in violation of the SCA to locate and arrest appellee, and because Detective Wawro further used cell phone records obtained by Ranger Murphree in violation of the SCA to question appellee, we conclude and hold that the trial court did not err by suppressing the statements made by appellee during the March 31, 2009 custodial interrogation. *See id.* at 459; *Miles v. State*, 241 S.W.3d 28, 36 (Tex. Crim. App. 2007); *Hailey v. State*, 413 S.W.3d 457, 485–86 (Tex. App.—Fort Worth 2012, pet. ref'd).[10] We overrule the State's first issue.

---

[10]The State does not argue that appellee failed to show a causal connection between any violation of the SCA and his subsequent statements.

**Search Warrant Motions**

**Spoliation Motion**

In part of its fifth issue, the State contends that the trial court erred by granting appellee's spoliation motion, either in whole or in part. Because the trial court excluded all of the cell phone records complained of by appellee pursuant to the spoliation motion,[11] we will review that issue first.

_____

*See Wehrenberg v. State*, 416 S.W.3d 458, 468 (Tex. Crim. App. 2013) ("[E]vidence is 'obtained' in violation of the law only if there is some causal connection between the illegal conduct and the acquisition of evidence."). As we have pointed out, the State has not challenged the trial court's refusal to allow it to introduce the videotaped confession; thus, we are left, as was the trial court, with the following assertions in appellee's motion, which we conclude and hold support the trial court's ruling excluding the evidence:

> The detective asked questions that were important to inculpating [appellee] and relevant to his prosecution in light of the facts and circumstances of this case. For example, Wawro asked (1) where [appellee] lived because he needed to confirm the locations to search for evidence, (2) what [appellee's] phone number was 'that was disconnected' and what 'other phones' he used because he needed to authenticate those numbers and connect them to [appellee], (3) if [appellee] went by 'Ryan' or 'Cliff' because [appellee's] accuser had only named a person called 'Cliff' as the culprit and Wawro needed to verify if they were one [and] the same, and (4) where the phone that went in the case on [appellee's] belt was because he needed to make sure he seized the right phone or obtained any other phones used by [appellee].

[11]The State complains in this issue only about the possible remedies of dismissal and the inclusion of an adverse instruction at trial. Although the State does not specifically address the trial court's exclusion of the cell phone records here as it does in its fourth issue, it does address the constitutional arguments that appellee raised in the trial court—and to which the State responded—in arguing that the cell phone records should be excluded pursuant to its spoliation motion. Accordingly, we will address whether the trial court erred by suppressing the cell phone records pursuant to the spoliation motion as well. *See* Tex. R.

**Applicable Law**

Appellee sought exclusion of the cell phone records under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, section 19 of the Texas constitution, because of alleged spoliation of either material or potentially useful evidence. Although appellee's motion sought only dismissal or an adverse inference instruction to the jury, on the second day of the suppression hearing, appellee also sought exclusion of the cell phone records on the spoliation ground.

In cases involving the State's failure to preserve evidence in a criminal trial, the United States Supreme Court has drawn a distinction between "material exculpatory evidence" and "potentially useful evidence." *See Arizona v. Youngblood*, 488 U.S. 51, 57–58, 109 S. Ct. 333, 337 (1988); *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010). A federal due process violation occurs if the State fails to disclose material exculpatory evidence, regardless of whether the State acted in bad faith. *Illinois v. Fisher*, 540 U.S. 544, 547, 124 S. Ct. 1200, 1202 (2004); *Gutierrez v. State*, 419 S.W.3d 547, 552 (Tex. App.—San Antonio 2013, no pet.). Evidence is material if there is a reasonable probability that its disclosure would affect the trial's outcome differently. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).

---

App. P. 38.1(f); *Davis v. State*, 268 S.W.3d 683, 695 n.1 (Tex. App.—Fort Worth 2008, pet. ref'd).

17

But the Supreme Court has also held that if a defendant seeks to prove a federal due process violation based on a state's destruction of "potentially useful evidence," as opposed to material evidence, the defendant must show that the State acted in bad faith in destroying the evidence. *Fisher*, 540 U.S. at 547–48, 124 S. Ct. at 1202; *Youngblood*, 488 U.S. at 57–58, 109 S. Ct. at 337. The Texas Court of Criminal Appeals has explained bad faith in the context of spoliation of DNA evidence as follows:

> "Bad faith" is more than simply being aware that one's action or inaction could result in the loss of something that is recognized to be evidence. As the cases we have discussed show, bad faith entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful. Bad faith cannot be established by showing simply that the analyst destroyed the evidence without thought, or did so because that was the common practice, or did so because the analyst believed unreasonably that he was following the proper procedure.

*Ex parte Napper*, 322 S.W.3d at 238. Additionally, this court has held that the Texas constitution does not provide greater protection than the United States Constitution on this issue. *Salazar v. State*, 298 S.W.3d 273, 278 (Tex. App.—Fort Worth 2009, pet. ref'd).

The State contends that there is no evidence that any of the complained-of cell phone records are exculpatory or that law enforcement acted in bad faith by failing to preserve them. Appellee did not argue that any of the evidence was exculpatory or otherwise favorable to him; he argued that he had no way of knowing whether the evidence was favorable to him—or which, if any, of the

18

records had initially been illegally obtained—because the evidence was no longer available to review. The State and appellee do not dispute, however, that all of the records originally obtained by Detective Wawro pursuant to the original six search warrants are now unavailable for review by the defense.

**Applicable Facts**

Defense counsel represented to the trial court that despite Detective Wawro's mentioning receiving cell phone records in a police report, the defense never received copies of any email correspondence between Detective Wawro and any service provider; defense counsel asked the trial court for that information as discovery in the second trial. At the time, the State acquiesced, saying, "if the Court wants to order him to turn over whatever the Court deems proper, then we're okay with that." When appellee asked Detective Wawro where the search warrant records were kept, he said, "They are contained at the Lewisville Police Department," either in the property room or on his computer. Detective Wawro stated that the records were usually sent to him via email, which he would file in a folder on his computer and then make a copy for the district attorney's office. When asked if he had turned over all of his paperwork with regard to this case to the "DAs that were prosecuting this case originally," Detective Wawro answered that he believed so. He also did not think he had supplemented any paperwork since filing the case. He could not remember any one piece of paper because there were "thousands." However, he also admitted

that in a previous discussion with defense counsel, he had said that if something is not pertinent to a case, he throws it away.

Appellee also called Lieutenant Dan Rochelle, who was in charge of the Lewisville police department's property room, to testify. Lieutenant Rochelle testified that he had been placed in charge of the property room when police discovered that their civilian property and evidence technicians had been mismanaging and stealing things from the property room. Specifically, the technicians violated the Department's procedures by not putting items in the right place and not marking on a property sheet where they did place them. Some missing items have never been found. Appellee offered, and the trial court admitted, the Department's property room manual.

The records from this case were not in the property room. In a discussion with the trial court, the State offered to meet with the defense and turn over whatever could be found; Detective Wawro offered to find whatever was on his computer and bring it to court.

On the second day of the suppression hearing, defense counsel represented that in the first trial, the defense did not timely get "the materials that are being supplied" and received discovery piecemeal, some of it during trial.

Appellee argued to the trial court that the search warrant return indicated that the information received would be held in the Department's property room, but it was not. The State then represented that Detective Wawro emailed over 200 pages of documents stored on his computer to the district attorney's office

and that the prosecutor had printed them out and turned them over to the defense that morning. However, the defense argued that the pages turned over were not all the records obtained by Detective Wawro. The defense offered, and the trial court admitted as Exhibit 13, the pages turned over by the State, which appear to be the records for the number ending in 2622 only. They consist only of text message content and not any cell site information. The State countered that all of the evidence admitted during the first trial was in its file and available for review by appellee; the State offered to give appellee the box of trial documents for review.

Detective Wawro testified that he turned over all of his original files to the State for the first trial and that Exhibit 13 was all he had left on his computer. He said that he had not modified the files in any way but that he did not know what may have happened to them at the district attorney's office. The State also told the court,

> Well, here's the -- the thing, Judge, as [defense counsel] pointed out, I was not the previous prosecutor who handled this case. So I would certainly like to hope that that happened, but I can't testify that it did because I was not involved with that case previously. What I can state to the Court and to the [d]efense is that I brought the entirety of the State's file over this morning. And looking over at it, it's two full boxes. But most of it is transcripts, and so obviously they have those. But as far as, like, the State's file, including -- or essentially our appellate file is contained in these two boxes, including attorneys' notes. I didn't remove one document that the previous prosecutors wrote, any kind of work product claim or anything like that. And they can look at that to their heart's desire.
>
> And I would like to hope that certainly all the police reports and all the lab reports and all that have been turned over, and I

21

believe that they have. But as far as like even prosecutor notes, witness interview notes, they can look at that. And if they want to make copies of it, I'll happily make a copy for them. It's whatever -- it's whatever they -- however they want to do it.

The defense then argued that it could not determine which of the items were received illegally because it did not know which phone records Detective Wawro received via search warrants and when, especially via email.

In its ruling, the court stated,

> The huge concern I have is that it seems apparent on its face that the records that have been provided to the [d]efense at this point that Detective Wawro was able to locate aren't anywhere close to the totality of records that these search warrants produced. And it just seems very clear that the very purpose that we have those statutes in place, it's to safeguard the evidence so that we don't have [d]efense attorneys coming up here and we don't have that -- and we don't have issues like this pop up where there has [sic] the appearance of just the evidence that we want in being produced or found. And I'm not making any such indications that that's occurred, but it's the appearance of such that eats away at the fabric of justice.

> We have got a wooden fence that has been put up by the state legislature, and we appear to have crashed through that. And we've got a big, huge brick wall put up by the founders of this nation under the Constitution and Bill of Rights. And I think we've smashed up into it. And at this point, there's -- there's no alternatives.

> At this point, I will order that that evidence be suppressed. And I'll order -- I'll make the same finding that's applicable to all the warrants so that if there's a question on appellate review, it's understood what I'm indicating.

**Analysis**

Here, there is no evidence that any of the missing phone records are exculpatory or material; thus, they are only potentially useful to the defense. *See Ramirez v. State*, 301 S.W.3d 410, 420 (Tex. App.—Austin 2009, no pet.); *see*

22

*also Fisher*, 540 U.S. at 547–49, 124 S. Ct. at 1202–03 (holding that evidence was only potentially useful despite fact that testing of destroyed drugs may have exonerated appellant and was his only hope of exoneration); *California v. Trombetta*, 467 U.S. 479, 486, 104 S. Ct. 2528, 2533 (1984) (noting that "[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed"); *Payne v. State*, No. 02-09-00100-CR, 2010 WL 1730857, at *3 (Tex. App.—Fort Worth Apr. 29, 2010, pet. ref'd) (mem. op., not designated for publication) (holding that argument that evidence might have exonerated appellant indicates evidence was only potentially useful).

Likewise, there is no evidence to support a finding of bad faith. Detective Wawro testified that he gave the District Attorney's office all of the records that he had obtained from the phone companies for the first trial. He did not know what happened to the records once they left his hands. The new prosecutor represented to the trial court that he had or would turn over to the defense all of the records that he had in his possession, including those that were used in the first trial. He had no knowledge of what might have happened to any of the records that were not included in the case file. Although defense counsel stated that in the first trial the State delivered only some of the phone records and delivered them piecemeal, he also told the trial court that appellee had never received copies of any emails between Detective Wawro and any service providers in the first trial. Presumably, the State as well as appellee would be

23

unable to use in the second trial any evidence that the State did not possess, and it also offered appellee pretrial access to all of the evidence it did possess.

Therefore, in the absence of any evidence showing what may have happened to those records, we conclude and hold that if the trial court determined that the loss or destruction of the records occurred in bad faith, it abused its discretion. *See, e.g.*, *Swearingen v. State*, 303 S.W.3d 728, 734–35 (Tex. Crim. App. 2010) (holding no evidence of bad faith when evidence was "inexplicably lost" while in possession of either state or federal law enforcement); *Williams v. State*, 946 S.W.2d 886, 893 (Tex. App.—Waco 1997, no pet.) ("Williams . . . presented no evidence that the State had any culpability in connection with the loss of the tape."). We sustain the part of the State's fifth issue challenging the merits of the spoliation motion, but only as to the trial court's ruling suppressing all of the phone records pursuant to that motion.

**Motion to Suppress Under Articles 18.09 through 18.11**

The State contends in its fourth issue that the trial court erred by suppressing evidence obtained from the six warrants as violative of articles 18.09, 18.10, and 18.11 of the code of criminal procedure.

Article 18.09 requires an officer who seizes property under a search warrant to carry the property before a magistrate, and article 18.10 provides that after returning a search warrant, an officer must deliver a copy of the inventory of the property taken into his possession under the warrant to a magistrate. Tex. Code Crim. Proc. Ann. arts. 18.09, 18.10 (West 2005). Article 18.10 further

24

requires the officer to retain custody of the property until the magistrate issues an order directing the manner of the safekeeping of the property, and it prohibits the removal of the property from the county in which it was seized without an order approving the removal from a magistrate in the county in which the warrant was issued. *Id.* art. 18.10. Article 18.11 requires that property seized under a search warrant be kept as provided by the magistrate's order issued under article 18.10. *Id.* art. 18.11.

The court of criminal appeals has held that article 38.23 does not apply to violations of Article 18.10 such that a violation of the statute does not render evidence inadmissible. *Martinez v. State*, 17 S.W.3d 677, 686 (Tex. Crim. App. 2000). This is because article 38.23 only prohibits the admission of evidence "obtained" in violation of a law, not the method in which evidence is maintained or stored after it is obtained. *Id.* Citing *Roberts v. State*, 963 S.W.2d 894, 903 (Tex. App.—Texarkana 1998, no pet.), for this proposition, appellee nevertheless urged in his motion to suppress, and in his brief, that the trial court should suppress the evidence because he has suffered actual prejudice from the State's violation of the statutes, which appellee contends is an exception to the holding in *Martinez*.[12]

Appellee misconstrues the holding of *Martinez*. Instead of stating an actual-prejudice exception, *Martinez* clearly holds that article 38.23's exclusion

---

[12]In his motion to suppress, appellee also urged the trial court to decline to follow *Martinez* because it was wrongly decided.

25

remedy "does not apply to violations of Article 18.10" because that statute's requirement involves the post-seizure handling of property. *Martinez*, 17 S.W.3d at 686; *Reeves v. State*, 969 S.W.2d 471, 487 (Tex. App.—Waco 1998, pet. ref'd), *cert. denied*, 526 U.S. 1068 (1999). Not only was *Roberts* decided before *Martinez*, it relies on an older court of criminal appeals opinion that does not mention an "actual prejudice" exception, holding only that a ministerial violation of the search warrant statutes does not void an otherwise valid warrant.[13] *Pecina v. State*, 516 S.W.2d 401, 404 (Tex. Crim. App. 1974), *disavowed on other grounds by Madden v. State*, 644 S.W.2d 735 (Tex. Crim. App. 1983). Accordingly, we decline to follow *Roberts* and the cases cited therein, and we conclude and hold that the trial court abused its discretion by granting appellee's motion based on the violation of articles 18.09 through 18.11 and suppressing evidence related to all six numbers on that basis.[14]

---

[13]*Roberts* also relied on cases involving typos or the police's failure to deliver a copy of the warrant or supporting affidavit when executing an otherwise valid warrant, a situation arguably more closely related to the obtaining of evidence. *See, e.g.*, *State v. Tipton*, 941 S.W.2d 152, 155 (Tex. App.—Corpus Christi 1996, pet. ref'd); *Turner v. State*, 886 S.W.2d 859, 864–65 (Tex. App.—Beaumont 1994, pet. ref'd); *Green v. State*, 880 S.W.2d 198, 201 (Tex. App.—Texarkana 1994, no pet.). The State relied on this older statement of the law in its brief in the context of arguing that appellee could not show any prejudice.

[14]Moreover, even if an actual prejudice exception applied, our holding would not change. Although we do not condone whatever acts or omissions led to this evidence being lost or destroyed, the State has made available all records from the first trial to appellee. Thus, although appellee does not have access to this missing material, neither does the State.

We therefore sustain the State's fourth issue. Because the trial court suppressed records for three of the numbers (0370, 6239, and 8326) for other reasons, we will also review the other grounds alleged by appellee to determine if the trial court could have properly suppressed records for those three numbers— as well as the remaining three numbers—on other grounds. *See Armendariz*, 123 S.W.3d at 404 (holding that appellate court may not reverse trial court's suppression ruling if correct under any theory of law applicable to the case); *State v. Molder*, 337 S.W.3d 403, 406 (Tex. App.—Fort Worth 2011, no pet.).

**Motion to Suppress for Lack of Probable Cause**

The State challenges the trial court's rulings on appellee's motion to suppress for lack of probable cause in its second issue. In that motion, appellee challenged Detective Wawro's use of form affidavits, contending that they appeared to be seeking actual cell phones rather than cell phone records; challenged the details in the affidavits, contending that they did not support a reasonable inference that the numbers were connected to him; and complained that in some of the affidavits the actual telephone numbers were missing or were not described with sufficient specificity.

**Standard of Review**

The court of criminal appeals has set forth the appropriate standard of review for a magistrate's authorization of a search pursuant to a warrant:

> While an appellate court typically reviews a trial judge's motion-to-suppress ruling under a bifurcated standard, a trial court's determination whether probable cause exists to support a search

warrant's issuance is constrained solely to the affidavit's four corners. When we review a magistrate's decision to issue a warrant, we apply a highly deferential standard of review because of the constitutional preference for searches conducted pursuant to a warrant over warrantless searches. Provided the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable-cause determination. The magistrate may interpret the affidavit in a non-technical, common-sense manner and may draw reasonable inferences solely from the facts and circumstances contained within the affidavit's four corners. Appellate courts should not invalidate a warrant by interpreting the affidavit in a hypertechnical, rather than a common-sense, manner. When in doubt, the appellate court should defer to all reasonable inferences that the magistrate could have made.

*Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013) (citations omitted).

### Sufficiency of Phone Number Descriptions in Affidavits

The probable cause affidavits that Detective Wawro provided for numbers 6239 and 8326 did not include a specified phone number in them. Instead, in the description of the facts, Detective Wawro states that during the investigation, Madden gave Dawson "the target phone number which he stated belonged to the DEFENDANT" and which he told the affiant that he gave to Dawson to call appellee to set up the deal. Additionally, he references the numbers in other parts of the affidavits, but only by the general term, "target number," instead of the actual phone number. Although missing from the affidavits, the correct phone numbers are listed in the signed warrants themselves.

Section 18.01(c) of the code of criminal procedure provides that an affidavit supporting a search warrant must show "sufficient facts to establish

28

probable cause . . . that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense . . . ." Tex. Code Crim. Proc. Ann. art. 18.01(c) (West Supp. 2013). Although the affidavits for 6239 and 8326 are sufficient to tie appellee to the alleged offense through the allegation that Madden gave Dawson appellee's phone number so that Dawson could set up a drug deal with appellee, this alone is insufficient to identify for the magistrate which of the voluminous phone numbers serviced by the provider was applicable, nor did it allow the magistrate the means to verify that the number printed in the warrant itself was the number associated with appellee; a magistrate could not reasonably infer from such a general description that records for a specific, named telephone number were being sought. *See id.* art. 18.01(c)(2). Accordingly, we conclude and hold that the trial court did not err by suppressing records for numbers 6239 and 8326 on this basis. *See Riojas v. State*, 530 S.W.2d 298, 303 (Tex. Crim. App. 1975) (holding that description in affidavit controls and limits description in warrant).

The trial court also suppressed records for number 0370 because the number listed in the supporting affidavit for number 0370 is incorrect, although the correct number is listed in the warrant itself. But the State did not object to the trial court's suppression of the records obtained via the warrant and supporting affidavit for 0370. Accordingly, we conclude and hold that the State did not preserve its complaint about the suppression of records for this number

for our review.  *See* Tex. R. App. P. 33.1(a)(1)(A); *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998); *State v. Ballman*, 157 S.W.3d 65, 71 (Tex. App.—Fort Worth 2004, pet. ref'd).  We may not reverse a trial court's suppression order on unpreserved grounds.  *Mercado*, 972 S.W.2d at 77; *Ballman*, 157 S.W.3d at 71.

Therefore, we overrule the State's second issue.

**General Sufficiency of Affidavits for 1836, 2622, and 4170**

The search warrant affidavits for numbers 1836, 2622, and 4170 contain the correct numbers and match the numbers shown in the warrants.  Thus, we review whether they are infirm on any other ground set forth in appellee's motion.

The warrant for 2622 reads as follows:

During your Affiant[']s employment, he has conducted investigations where people that have commit[ted] criminal offenses have use[d] cell phone[] devices including emails, text messaging, instant messaging, [and] internet searches, and used cell phones to plan and to share information related to the offense.  It has also been learned that the same type of devices are used for research, planning and concealment of the offenses.

A. THIS SUSPECTED PLACE IS IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING NAMED PARTIES TO WIT:

*The custodian of records with Sprint PCS cellular telephone company.*

B. IT IS THE BELIEF OF AFFIANT THAT AT THE SUSPECTED PLACE THERE WILL BE FOUND PROPERTY AND ITEMS CONSTITUTING CONTRABAND AND INSTRUMENTS USED TO COMMIT CRIMINAL ACTS IN VIOLATION OF THE LAWS OF TEXAS.  SUCH PROPERTY AND ITEMS WILL CONSIST OF THE FOLLOWING:

30

The search of said cellular telephone stored records may include the examination of installed software; that is, digital information that can be interpreted by a computer and any of its related components, which may be stored in electronic, magnetic, optical, or other digital form. The search includes the examination of stored materials, media, documents, and data, including but not limited to: address books; recently called numbers; recently received numbers; voice mail; digital images; text messages; and GPS coordinates of incoming and outgoing calls/text messages. The search may also include the examination and/or utilization of any manuals and documentation which may be written, recorded, printed, and/or electronically stored material which explains or illustrates how to configure or use the cellular telephone or other related items. The search may also include other areas of the cellular telephone in which said suspected party may store data evidence which is the object of the search requested herein. Furthermore, said items can be analyzed by a trained evidence recovery specialist in order to retrieve, restore, and/or reproduce any or all Information believed to be evidence of said offense(s).

C. AFFIANT HAS PROBABLE CAUSE FOR THE SAID BELIEF BY REASON OF THE FOLLOWING FACTS, TO WIT:

On March 27, Officer R. Lee was dispatched to 2400 block of Interstate 35 North Bound Frontage Road in the City of Lewisville, Denton County, Texas on an unknown problem. The caller said there was someone in a vehicle possibly sleeping but did not respond when he tapped on the window. Officer Lee arrived and found Dawson was deceased. The decedent appeared to have a gunshot wound to the head but there was no apparent firearm located in the vehicle.

The Decedent had been reported missing out of the Denton Police Department a day earlier. Your Affiant contacted the Decedent[']s girlfriend who advised that she learned that the decedent was to meet someone from Dallas to sell some marijuana. I contacted Joshua Madden who told me that the Decedent wanted to sell some Marijuana and asked him if he knew anyone. Madden

31

told your affiant that he gave the Decedent [a] phone number which he stated belonged to the DEFENDANT. Madden heard the next day that the Decedent was missing. He called the DEFENDANT who told him that he (the DEFENDANT) had the weed and the money and things went "left" which he (Madden) understood to mean things didn't go right. Madden stated that the phone call suddenly ended and [t]he DEFENDANT used target number [XXX-XXX]-2622 to call Madden back and continue the conversation. Madden said he knew the DEFENDANT and thought his name was Ryan Harrison who went by the nick name "Cliff". He said that the DEFENDANT went to school with his younger sister a few years ago. A driver's license photo of the DEFENDANT was taken to MADDEN who identified him as the same person that he lined up with the decedent for the drug transaction. The photo was shown to Madden's father and sister who both said that [the person] was Ryan Harrison who goes by "Cliff".

Madden gave your Affiant the phone number of the DEFENDANT. With the help of the Texas Rangers we were able to get the phone records of the decedent's phone. The records showed that the last answered call on the Decedent's phone was that of the DEFENDANT and the location of that received call was the same location [where] we found the decedent's body. There were no other calls made or received from the decedent's phone after the last received call from the DEFENDANT.

Your Affiant spoke to Tremayne Stanberry who said that he received a call from the DEFENDANT who told him he had the money and the marijuana. Stanberry asked about his missing friend and if he was okay and the DEFENDANT hung up the phone.

Appellee argued in his motion that the language above is insufficient to show that Detective Wawro was seeking cell phone records for number 2622 rather than the actual phone handset itself. However, reviewing the entire affidavit in a common-sense manner, including the description of the place to be searched, we conclude and hold that a magistrate could reasonably infer from the totality of the affidavit that Detective Wawro was seeking all records in

32

Sprint's possession related to number 2622—including text message contents, GPS coordinates related to phone calls, incoming and outgoing numbers dialed, and address books. That the physical address of the custodian of records for Sprint is not listed does not frustrate the constitutional objectives of the requirement that the warrant describe with particularity the place to be searched. *See Long v. State*, 132 S.W.3d 443, 447 (Tex. Crim. App. 2004) (holding that the constitutional objectives of requiring a particular description of the place to be searched include "1) ensuring that the officer searches the right place; 2) confirming that probable cause is, in fact, established for the place described in the warrant; 3) limiting the officer's discretion and narrowing the scope of his search; 4) minimizing the danger of mistakenly searching the person or property of an innocent bystander or property owner; and 5) informing the owner of the officer's authority to search that specific location)"; *see also* Tex. Code Crim. Proc. Ann. art. 18.01(c)(1). The affidavit supporting the warrant for numbers 1836 and 4170 are sufficiently similar that they are not infirm for the same reasons.

Appellee also argued that the affidavits were insufficient because of what they were missing: any steps taken by Detective Wawro to verify that the numbers Madden provided him were connected to appellee, the number from which Stanberry received a call from appellee, or "subscriber verification or authentication of the alleged caller." Additionally, appellee complained that the

affidavit for number 2622 did not state the name of the subscriber to whom the number was related but only that appellee "used" it to call Madden.

The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus instead on the combined logical force of facts that are in the affidavit. *Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007). Reviewing the totality of the circumstances set forth in the affidavit for number 2622, we conclude and hold that a magistrate could have reasonably concluded that Madden, as an admitted participant in arranging a drug deal who was familiar with appellee, as verified by Madden's family, gave Detective Wawro a reliable phone number from which appellee had called Madden in relation to the offense being investigated and that the records from those numbers would lead to evidence of a crime. The affidavit for 4170 is similar, also containing the statement, "Madden stated that all cell phone and text message conversations with [appellee] occurred on Madden[']s target cell phone number [XXX-XXX]-4170." Accordingly, we also conclude and hold that a magistrate could have reasonably concluded that probable cause was shown in that affidavit. Furthermore, we conclude and hold that the similar information about Madden's arranging the drug deal, with the addition of Detective Wawro's statement that "[a] previous search warrant revealed that [appellee] also had a phone with number [XXX-XXX]-1836," also supported the magistrate's determination of probable cause to obtain records for that number. *See, e.g.*, *Earhart v. State*, 823 S.W.2d 607, 631 (Tex. Crim. App. 1991), *judgment vacated*

34

*on other grounds by Earhart v. Texas*, 509 U.S. 917 (1993); *Wilkerson v. State*, 726 S.W.2d 542, 545 (Tex. Crim. App. 1986), *cert. denied*, 480 U.S. 940 (1987).

Because we have held that the trial court erred by suppressing the records for numbers 1836,[15] 2622, and 4170—and that no other grounds support the suppression of the records for those numbers—we will reverse the trial court's suppression order as to the records for those numbers.

### Admissibility of 6239 Records Because of Subsequent Order

In its third issue, the State contends that cell site location information for number 6239, which was obtained in July 2010 via order in accordance with section 2703(d) of the SCA, should not have been suppressed.

Shortly before the first trial, the State applied for and obtained a court order requiring Sprint to produce stored records related to number 6239, including cell site location information, for March 18, 2009 through March 30, 2009. Appellee filed a motion to suppress the cell site location information contending, in part, that the information was "tainted by the earlier illegal acquisition of the same evidence by the 'Wawro warrants.'"

---

[15]Although appellee filed a third motion to suppress records for numbers 1836 and 6239 that the State subsequently obtained via order pursuant to section 2703(d) of the SCA, he withdrew the motion as to number 1836 during the suppression hearing, so we do not address the trial court's ruling as to that number.

35

An officer may obtain stored subscriber records from a telecommunications provider without the subscriber's consent and without a warrant in accordance with a court order meeting the following requirements:

> A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State.

18 U.S.C.A. § 2703(c), (d).

The State contends that even if the records obtained pursuant to the 2703(d) court order were tainted because the need for those records was revealed by the records initially obtained by Murphree in violation of the SCA, that taint was attenuated such that the evidence is admissible.

The court of criminal appeals has explained the attenuation doctrine as follows:

> The Fourth Amendment exclusionary rule exclusively serves a function of deterrence, to discourage undue police encroachment upon the privacy and personal integrity of the citizenry. Because of the substantial social costs involved in exercising this deterrent function, however, application of the exclusionary rule should operate as a "last resort," not a "first impulse." Accordingly, not every Fourth Amendment violation necessarily results in the suppression of evidence just because, but for that violation, the evidence would never have been exposed. As the Supreme Court observed in *Wong Sun v. United States*:
>
> > We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come

36

> to light but for the illegal actions of the police. Rather, the more apt question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*State v. Mazuca*, 375 S.W.3d 294, 300 (Tex. Crim. App. 2012), *cert. denied*, 133 S. Ct. 1724 (2013) (quoting *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S. Ct. 407, 417 (1963)) (citations omitted). Appellee contends that the evidence obtained via the 2703(d) order was obtained by exploitation of the illegally obtained evidence.

The proper factors to be considered in an attenuation of the taint analysis are found in *Brown v. Illinois*, 422 U.S. 590, 603–04, 95 S. Ct. 2254, 2261–62 (1975): the temporal proximity of the illegality and the seizure of the evidence, any intervening circumstances, and the purpose and flagrancy of the official's misconduct. *Mazuca*, 375 S.W.3d at 301–02; *Pham v. State*, 175 S.W.3d 767, 773 (Tex. Crim. App.), *cert. denied*, 546 U.S. 961 (2005). Here, although slightly over a year had passed between the time Detective Wawro obtained the 6239 number (from his interview of Madden and from Dawson's illegally obtained records) and the time the State sought an order seeking records for that number, despite the State's assertions, nothing in the record indicates that evidence was developed from any other source regarding the significance of that phone number, i.e., as placing appellee at the scene of the murder. Nor was there evidence of any other intervening circumstances. The initial search warrant

37

affidavit for 6239 itself shows that even though police had obtained appellee's number from Madden, they did not know the significance of that number but for its appearance in Dawson's phone records. For that reason, the evidence is not admissible pursuant to the independent source doctrine ratified in *Wehrenberg v. State*, 416 S.W.3d 458, 469–70 (Tex. Crim. App. 2013).

Moreover, the State's application for the 2703(d) order asserted that the records were being sought to "confirm investigative leads related to the investigation." There is no evidence that these leads were any other than the initial lead developed from Dawson's illegally obtained phone records. Accordingly, we conclude and hold that the State did not prove sufficient attenuation of the taint such that the evidence from number 6239 obtained via the section 2702(d) order would be admissible. *See, e.g.*, *Brown*, 422 U.S. at 604, 95 S. Ct. at 2262; *Weems v. State*, 167 S.W.3d 350, 360–61 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd), *cert. denied*, 547 U.S. 1135 (2006). Accordingly, we overrule the State's third issue.

## Order on Spoliation Motion

The State contends in the remainder of its fifth issue that we should abate this appeal to determine whether the trial court truly intended to grant appellee's motion seeking dismissal of the case for spoliation of evidence or, in the alternative, seeking a jury instruction at trial. Although the trial judge initialed next to a box that says the motion is granted, he also wrote on the order, "issue

to be explored during questioning of witnesses." This comports with the judge's oral ruling:

> And with regard to the [d]efense's spoliation motion, I'll deny the request for dismissal with prejudice. I will allow the issue to be explored during the questioning of witnesses. And at this point, I'm not ruling that there should be an instruction, but obviously if questioning brings out evidence that indicates there should be, then I can make that decision down the road. But at this point, I don't see that it's there. So [the] [d]efense will absolutely be able to go into it with the witnesses.

Because the judge's handwritten comments clarify that he neither intended to dismiss the case nor rule in advance of trial whether to give a spoliation instruction, we conclude and hold that neither abatement nor reversal is necessary. *Cf.* Tex. R. App. P. 44.4(a)–(b) (providing that court of appeals may not rule on merits or dismiss an appeal—and must abate—if a trial court's action prevents proper presentation of appeal). We overrule the remainder of the State's fifth issue.

## Conclusion

Having sustained the State's fourth issue and part of its fifth issue, we reverse the trial court's order suppressing records related to numbers 1836, 2622, and 4170.  But having overruled the rest of the State's issues, we affirm the trial court's orders suppressing cell phone records related to numbers 0370, 6239, and 8326, as well as the statements made by appellee to Detective Wawro on March 31, 2009.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  May 30, 2014